THE STATE EX REL. GUTHRIE, APPELLANT, *v.* INDUSTRIAL
COMMISSION OF OHIO, APPELLEE.
[Cite as *State ex rel. Guthrie v. Indus. Comm.,*
133 Ohio St.3d 244, 2012-Ohio-4637.]

*Workers' compensation—Permanent total disability—Commission did not abuse*
*discretion in denying benefits for permanent total disability—Claimant*
*capable of sustained remunerative employment—Vocational factors*
*properly taken into consideration—Fact that claimant's best efforts at*
*rehabilitation did not lead to job is irrelevant to eligibility for benefits.*

(No. 2011-0432—Submitted August 21, 2012—Decided October 10, 2012.)

APPEAL from the Court of Appeals for Franklin County,

No. 10AP-171, 2011-Ohio-833.

_____

**Per Curiam**.

{¶ 1} Appellant, Pamela Guthrie, filed an application for permanent total disability ("PTD"). The Industrial Commission of Ohio, appellee, found that Guthrie was capable of sedentary sustained remunerative employment and denied her request for PTD. Guthrie filed a complaint in mandamus in the Franklin County Court of Appeals, alleging that the commission had abused its discretion. The court of appeals denied Guthrie's mandamus action. For the reasons that follow, we affirm.

FACTS

{¶ 2} Guthrie has several work-related knee conditions that have left her with a 20 percent permanent partial disability. These conditions were enough to keep her from returning to her former position of employment as a nurse's aide.

She began receiving temporary total disability compensation in 2004 and has never worked again.

{¶ 3} Guthrie was in her mid-40s when she stopped working. She is a high school graduate, and as part of an Industrial Commission vocational rehabilitation program, she completed a four-year graphic-arts program. Despite her involvement in rehabilitation on at least two occasions, she never secured employment. Rehabilitation efforts ceased in 2009, and the closure report that followed reflected on Guthrie's participation:

> She would not attend Networking Group but met with her [employment services specialist] weekly, and [in] her last report period she agreed to meet twice each week. Pam is reluctant to change routines and habits even when they are unproductive or counterproductive. She tended to contact many employers regarding jobs for which she is not qualified. Her training and experience is limited, and there are limited jobs she can perform partially because of her physical limitations. She discards many suggestions and harbors many self-defeating attitudes. However, her strong will and determination also work for her at times. She was highly motivated in her search and did everything required of her. During her last Staffing, she was informed by her team that she would need to alter her approach, try different things, invest more time in her search, and broaden job considerations and possibilities. Her case was closed by BWC on 1-30-09. * * *
>
> * * *
>
> Pamela's job development program will not be extended past 2/1/09. The team encouraged Pamela to apply to positions that will help her obtain some recent work experience, rather than

search for a "perfect" job and to search for a sedentary position that will accommodate her physical limitations. Pamela reported that this is "frustrating" but she realizes that this is the "reality" of the situation.

**{¶ 4}** In 2009, Guthrie applied for PTD. The Industrial Commission of Ohio, through a staff hearing officer ("SHO"), finding that Guthrie was medically and vocationally capable of sedentary sustained remunerative employment, denied PTD. Guthrie does not dispute that from a medical standpoint, she is capable of sedentary employment, but contends that the commission abused its discretion by dismissing or discounting relevant vocational factors.

**{¶ 5}** Discussing Guthrie's vocational profile, the hearing officer wrote:

[T]he Injured Worker has a pre-existing condition that impacts upon some employment opportunities. She has severe hearing loss. However, the Injured Worker can read lips. The record reflects that the Injured Worker was involved in a rehabilitation for job search [sic]. She was not able to find employment. They closed her file. After the closure of the file, the Injured Worker stopped looking for employment even though rehabilitation had recommended that she continue to look for employment. A review of the rehabilitation file indicates that they recommended to the Injured Worker to contact State of Ohio Bureau of Vocational Rehabilitation for further services as this agency helped her with training in the past.

The Staff Hearing Officer finds that the Injured Worker has the ability to secure employment notwithstanding her pre-existing condition. * * * The Injured Worker has also had some computer

training in order to enhance her ability to secure employment. The Staff hearing officer acknowledges that the Injured Worker's ability to secure employment is difficult but it is because of the job market. Her disability factors are not of such magnitude that would warrant a finding of permanent and total disability. The Injured Worker could look for sedentary employment.

{¶ 6} Thereafter, Guthrie filed a complaint in mandamus in the Court of Appeals for Franklin County, alleging that the commission had abused its discretion in denying PTD. She focused on her extensive participation in rehabilitation and the program's failure to lead to a job. These factors, she argued, compelled a finding of PTD.

{¶ 7} The court of appeals disagreed, finding that the commission had not abused its discretion in concluding that Guthrie was medically and vocationally capable of sustained remunerative employment. The court found that the SHO did not ignore or improperly discount any relevant vocational factors, and the fact that Guthrie's efforts at rehabilitation had not translated into a job was irrelevant to PTD eligibility. The court of appeals denied the writ, prompting Guthrie's appeal to this court as of right.

## DISCUSSION

{¶ 8} PTD is the inability to perform sustained remunerative employment. *State ex rel. Stephenson v. Indus. Comm.*, 31 Ohio St.3d 167, 509 N.E.2d 946 (1987). It can result from the allowed medical conditions alone or in tandem with the factors enumerated in *Stephenson*. The weight to be given to these factors rests exclusively with the commission, which is considered to be the expert on PTD matters. *State ex rel. Ellis v. McGraw Edison Co.*, 66 Ohio St.3d 92, 94, 609 N.E.2d 164 (1993); *State ex rel. Jackson v. Indus. Comm.*, 79 Ohio St.3d 266, 271, 680 N.E.2d 1233 (1997).

**{¶ 9}** The SHO's conclusion that Guthrie's allowed conditions did not foreclose sustained remunerative employment required her to analyze Guthrie's *Stephenson* factors. *Stephenson* at 170. She discussed Guthrie's age (50), varied work experience, education, and skills, which included a high school diploma, the completion of a four-year graphic-arts program, and computer training. She concluded that the cumulative effect of these factors on Guthrie's capacity for sustained remunerative employment was "not of such magnitude that would warrant a finding of permanent and total disability." This conclusion was within the hearing officer's discretion as evidentiary evaluator and was not an abuse of discretion.

**{¶ 10}** In her second proposition of law, Guthrie argues that the SHO improperly refused to consider her rehabilitation attempt as a factor in favor of PTD. Guthrie states that she made serious attempts at rehabilitation over a five-year period and that the SHO unfairly discounted those efforts. She implies that the SHO denied PTD to punish her for ignoring the rehabilitation division's advice. She criticizes the SHO's suggestion that her rehabilitation efforts were unsatisfactory and cites *State ex rel. Ramsey v. Indus. Comm.*, 10th Dist. No. 99AP-733, 2000 WL 329058 (Mar. 30, 2000), *affirmed without opinion*, 91 Ohio St.3d 24, 740 N.E.2d 672 (2001), as support for the proposition that the commission denied PTD punitively.

**{¶ 11}** *Ramsey*, however, is inapposite. First and foremost, according to the *Ramsey* court, the order denying PTD in that case appeared to rely solely upon the medical evidence, ignoring vocational information available in the file. The court held that the SHO had abused his discretion by failing to consider relevant vocational evidence. By contrast, the SHO in the instant case considered all factors before denying PTD. This court cannot second-guess her evaluation of the evidence. *State ex rel. George v. Indus. Comm.*, 130 Ohio St.3d 405, 2011-Ohio-

6036, 958 N.E.2d 948, ¶ 11 (the commission is exclusively responsible for assessing the weight and credibility of the evidence).

{¶ 12} Second, even if *Ramsey* were not distinguishable for this reason, the language relied upon by Guthrie does not avail her. The vocational evidence in *Ramsey* showed that the claimant failed at rehabilitation, even though he did his best to succeed. In issuing a limited writ ordering the commission to consider that evidence, the court of appeals remarked that failure at rehabilitation is not always a negative factor, "used as a means to punish injured workers on those occasions when a hearing officer feels that the injured worker has failed to exercise his or her best efforts at rehabilitation." 2000 WL 329058, *1. The court emphasized that a claimant's good-faith, best-effort failure should be considered as a positive factor in favor of granting PTD compensation.

{¶ 13} There is no basis in this case for imputing to the SHO a desire to punish the claimant because she failed at rehabilitation. The SHO considered all of the evidence.[1] The denial of PTD that followed was not "punishment"; it was the natural consequence of Guthrie's failure to carry her burden of proof. Only when a denial is issued against a claimant who is *incapable* of sustained remunerative employment due to allowed conditions or a combination of those conditions and vocational factors can the denial be considered unjust and possibly punitive.

{¶ 14} The fact that the SHO did not view Guthrie's rehabilitation efforts favorably does not affect the validity of the order. The commission is exclusively responsible for interpreting the vocational evidence before it. *Ellis*, 66 Ohio St.3d at 94, 609 N.E.2d 164; *Jackson*, 79 Ohio St.3d at 271, 680 N.E.2d 1233. Here, the rehabilitation division made both favorable and unfavorable comments about

---

1. The SHO did make repeated references to Guthrie's failure to engage in a postrehabilitation job search. These were largely unnecessary observations and may have obfuscated—rather than enhanced—the most salient portion of the SHO's order, which was that Guthrie was capable of sustained remunerative employment.

Guthrie's participation, and the commission was permitted to accept the latter over the former. Thus, we find no abuse of discretion.

{¶ 15} Guthrie also believes that the commission should have factored her deafness into its PTD analysis. She is incorrect. A disability finding can never be based—even in part—on medical conditions that are unrelated to the industrial injury. *State ex rel. Waddle v. Indus. Comm.*, 67 Ohio St.3d 452, 454-455, 619 N.E.2d 1018 (1993); *State ex rel. Nissin Brake Ohio*, *Inc. v. Indus. Comm.*, 127 Ohio St.3d 385, 2010-Ohio-6135, 939 N.E.2d 1242, ¶ 13-15.

{¶ 16} Finally, Guthrie asserts that by attributing her inability to work to the poor job market, the SHO improperly factored the economic climate into the PTD equation. This contention fails for the reasons given by the court of appeals. PTD was denied because Guthrie was found to be medically and vocationally capable of sustained remunerative employment. That finding is all that matters. In referring to the job market, the SHO was merely speculating as to why Guthrie's ability to work had not translated into an actual job. It was nothing more than a surplus observation that does not affect the merit of the SHO's analysis.

{¶ 17} Accordingly, we affirm the judgment of the court of appeals.

Judgment affirmed.

O'CONNOR, C.J., and PFEIFER, LUNDBERG STRATTON, O'DONNELL, LANZINGER, CUPP, and MCGEE BROWN, JJ., concur.

_____

Philip J. Fulton Law Office, Ross R. Fulton, and Philip J. Fulton, for appellant.

Michael DeWine, Attorney General, and Rema A. Ina, Assistant Attorney General, for appellee.

_____