[Cite as *State ex rel. Crawford v. Indus. Comm.*, 2014-Ohio-2911.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio ex rel. Larry Crawford, | : | |
| Relator, | : | |
| v. | : | No. 13AP-929 |
| Industrial Commission of Ohio and Custodis Cottrell, Inc., | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

D E C I S I O N

Rendered on June 30, 2014

*Philip J. Fulton Law Office, Michael P. Dusseau* and *Chelsea J. Fulton,* for relator.

*Michael DeWine*, Attorney General, and *Brian J. Becker*, for respondent Industrial Commission of Ohio.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

O'GRADY, J.

{¶ 1} Relator, Larry Crawford, filed this original action requesting this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying relator's application for permanent total disability ("PTD") compensation and to issue an order finding relator is entitled to said compensation or, in the alternative, to issue an order which considers relator's attempts at vocational rehabilitation.

{¶ 2} This matter was referred to a magistrate pursuant to Civ.R. 53(C) and Loc.R. 13(M) of the Tenth District Court of Appeals. The magistrate issued the appended decision, including findings of fact and conclusions of law, and recommended this court

deny relator's request for a writ of mandamus.  Relator filed objections to the magistrate's decision.

{¶ 3}    Relator delineates two objections:

> The Magistrate Erred In Not Finding an Abuse of Discretion or Even Addressing the Commission's Punishment of Relator For His Positive Rehabilitation Attempts.

> The Magistrate Erred When She Concluded That the Injured Worker Did Not Put Forth His Best Efforts in Being Rehabilitated.

{¶ 4}    Relator argues under his first objection the magistrate erred by not finding the commission abused its discretion.  Relator claims the magistrate failed to address the commission's "use of [r]elator's positive rehabilitation attempts as a means of punishment and ultimate basis for denying PTD."  (Relator's Objections, 5.)  We disagree.  The magistrate quoted from the staff hearing officer's order including the portion relater takes issue with, which states: "[Relator] was able to learn and perform up to skilled work in the past.  This is supported by the fact he was found to be a candidate for vocational rehabilitation and completed a program in 2008."  (Attached Magistrate's Decision, ¶ 20.)  Relator points out that he did not "complete" the program.  Instead, his vocational rehabilitation file was closed for a number of reasons.  The magistrate quoted extensively from the vocational rehabilitation case manager's closure report, and she discussed and analyzed that report at length.  There is no merit to relator's assertion that the magistrate did not address relator's rehabilitation attempts, or the commission's consideration thereof.  Moreover, we agree with the magistrate's conclusion that the commission did not abuse its discretion.

{¶ 5}    Relator also argues the magistrate erred in applying the law in light of his rehabilitation attempts.  Specifically, he contends the magistrate misapplied *State ex rel. Ramsey v. Indus. Comm.*, 10th Dist. No. 99AP-733 (Mar. 30, 2000) and *State ex rel. Guthrie v. Indus. Comm.*, 133 Ohio St.3d 244, 2012-Ohio-4637.  We disagree.  The magistrate correctly applied the law.  Accordingly, relator's first objection is overruled.

{¶ 6}    Relator argues under his second objection the magistrate erred when she concluded relator did not put forth his best efforts at vocational rehabilitation.  The magistrate did not arrive at that conclusion.  The magistrate stated, "to the extent that

relator argues that he made a serious effort at rehabilitation, the magistrate disagrees with relator's assertion that the commission was required to find that he made a serious effort at vocational rehabilitation."  (Attached Magistrate's Decision, ¶ 33.)  The magistrate was discussing the commission's obligation, not finding that relator indeed failed to exercise his best efforts.  The magistrate later commented:

> [A]lthough relator contends that he made a serious effort at rehabilitation and that the vocational rehabilitation closure report indicates a failure to be rehabilitated despite his best efforts, the magistrate finds that relator's assertion is not necessarily supported by the report.
>
> As in *State ex rel. Guthrie v. Indus. Comm.*, 133 Ohio St.3d 244, 2012-Ohio-4637, the vocational evidence here has both negative and positive aspects and the commission could accept the negative aspects as the ultimate interpretation of the vocational evidence.  The closure report simply is not as favorable as relator asserts.

(Attached Magistrate's Decision, ¶ 42-43.)  These factual observations are accurate as is the magistrate's legal conclusion.  *See State ex rel. Brahler v. Kent State Univ.*, 10th Dist. No. 13AP-143, 2013-Ohio-5299, ¶ 4.

{¶ 7}  Relator also directs our attention to documentation in the record that indicates relator received non-working wage loss compensation for 200 weeks prior to the commission denying his application for PTD compensation.  That documentation indicates relator had to continually submit forms evidencing a good-faith job search effort in order to continue to receive those benefits.  Relator asserts "his unsuccessful job search attempt for nearly four years confirms that he did put forth his best efforts at rehabilitation but instead was unable to obtain sustained remunerative employment due to his injury and lack of transferable skills."  (Relator's Objections, 9.)  We cannot agree.  As the magistrate noted, the record before this court does not contain the records of relator's job search efforts.  We are not willing to assume those records are so favorable to relator that the commission abused its discretion, in light of those records, by denying relator's application for PTD compensation.  Accordingly, relator's second objection is overruled.

{¶ 8}  Following our examination of the magistrate's decision, an independent review of the record pursuant to Civ.R. 53, and due consideration of relator's objections,

we overrule the objections and adopt the magistrate's findings of fact and conclusions of law.  Relator's request for a writ of mandamus is denied.

*Objections overruled;*
*writ of mandamus denied.*

SADLER, P.J., and TYACK, J., concur.

————————————————

# APPENDIX

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio ex rel. Larry Crawford, | : | |
| Relator, | : | |
| v. | : | No. 13AP-929 |
| Industrial Commission of Ohio and Custodis Cottrell, Inc., | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

## M A G I S T R A T E ' S   D E C I S I O N

### Rendered on April 24, 2014

*Philip J. Fulton Law Office, Michael P. Dusseau* and *Chelsea J. Fulton,* for relator.

*Michael DeWine*, Attorney General, and *Brian J. Becker*, for respondent Industrial Commission of Ohio.

### IN MANDAMUS

{¶ 9} Relator, Larry Crawford, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied his application for permanent and totally disability ("PTD") compensation and ordering the commission to find that he is entitled to that compensation or, in the alternative, issue an order which considers relator's attempts at vocational rehabilitation.

Findings of Fact:

{¶ 10} 1. Relator sustained a work-related injury on September 19, 1989 and his workers' compensation claim has been allowed for the following conditions:

> Broken ribs; broken pelvis; fracture thoracic spine; right shoulder and right humerus contusions; posterior scalp lacerations in the occipital region with large hematoma; laceration of left forehead; facial lacerations; brain concussion; lung contusion and pulmonary embolus and bilateral pleural effusion with probable intra-parenchymal hemorrhage; traumatic spondylolisthesis T6-T7 with concomitant T7 rib fractures; transversus process fractures; laminae fractures; fusion from T5 to T8; fractures of left iliac bone and separation of the sacro-illiac joint; paralytic ileus; subluxation of the dorsal spine at the level of D7 and D8; laceration of the left lateral eye area; multiple abrasions and contusions both legs; right autogenous, iliac bone graft; adjustment disorder with depressed mood.

{¶ 11} 2. Relator filed his first application for PTD compensation on December 2, 2005.

{¶ 12} 3. Following a hearing before a staff hearing officer ("SHO") on March 31, 2006, relator's application was denied. The SHO relied on medical reports that relator was capable of performing light work and most aspects of medium work, except that he was limited to lifting 30 pounds and that his psychiatric condition was not work prohibitive. Thereafter, the SHO discussed the non-medical disability factors, stating:

> The injured worker is currently only 50 years of age. He went to school through the 11th grade, but obtained his GED. He can read, write, and do basic math. He has work experience as a carpenter. He has never participated in any type of rehabilitation program. There is no evidence that he has ever tried to return to work.

> The injured worker is only 50 years of age. He has his GED. While he can't return to most of the physical demands of carpentry, he has demonstrated work abilities in this area. Dr. Tosi stated the injured worker appeared to have average intelligence. A man of 50 years of age with a GED and average intelligence should be able to learn and obtain a job in the light work level. In any case, he is under an obligation to make a good faith effort to try to return to work.

> Since the injured worker is capable of at least light duty work related to the allowed conditions in the claim and because he has a capacity intellectually to perform light work, the application is denied.

{¶ 13} 4. After relator's first application for PTD compensation was denied, he first requested and was approved into a vocational rehabilitation program through the Ohio Bureau of Workers' Compensation in March 2008.

{¶ 14} 5. Relator's vocational rehabilitation file was closed on September 26, 2008. In that report, relator's case manager noted that relator had the following negative impacts on his ability to become re-employed which were not related to the allowed conditions in his claim:

> He does have past legal activity which impacts what jobs he can do[.] He does not have a valid Ohio driver's license due to a DUI prior to 2003 nor a vehicle[.] He is not willing to relocate due to local family and desires at least $23/hour in wages[.] He is limited to part time employment[.]

{¶ 15} Thereafter, relator's case manager described the course of relator's program and the reasons why the program was closed, stating:

> The RTW hierarchy was chosen as DJDE as he can not go back to the EOR, the Union Hall, and carpentry is beyond his physical abilities[.] An original plan was written for JSST, Job search, JPS, Case Management, LM, and Bus pass[.] Plan Amendment #1 was written to extend JSST one week due to a problem where COTA messed up the bus pass and he was not able to make JSST meeting[.] Plan Amendment #2 was written to extend job search activities[.] He has some troubles with taking the bus and with elevated blood pressure due to some heat exposure[.] He experienced increased pain levels[.] He had had problems with his phone but got it resolved[.] Plan Amendment #3 was written to continue job search to week 13[.] The week of 7/14, Mr. Crawford had to leave his current housing as it was sold and had to find a new place to live. He had difficulty with his phone during this time but got it fixed[.] He also had some problems with COTA and his bus pass which were then resolved[.] Plan Amendment #4 was written for extension of job search beyond 13 weeks per chapter 4 guidelines due to the extenuating circumstances of the number of barriers he has such as his limited physical ability, seeking part time work and the need to job search via the bus line[.] The plan

was written for two additional weeks of job search and JPS hours[.] COTA sent him the wrong bus pass and it was never resolved by the end of the plan[.] Changes were made to the resume for his new address[.] The JPS had a death in the family and was out til 8/25/08 but another JPS covered with him[.] He did have two interviews within 15 weeks but did not secure employment[.] He had some problems with his new cell phone and went back to his old number[.]

He is 53 years old with no GED[.] He has spent his life in carpentry which he can not [sic] longer do and has no transferable skills in the sedentary to light strength range[.] He has no drivers license or vehicle and has not worked in the last 12 years[.] His POR has opined that he can only work part time[.] He is in chronic pain and has many physical limitations[.] In spite of participating in vocational rehabilitation programming he has not succeeded[.] At this point it appears he is not able to obtain and sustain remunerative employment[.]

{¶ 16} 6. Thereafter, relator was paid non-working wage loss compensation beginning September 22, 2008. Relator continued to receive non-working wage loss benefits through September 18, 2012 when they were terminated because relator had received the maximum number of weeks of wage loss compensation permissible under Ohio law.

{¶ 17} 7. Relator filed his second application for PTD compensation on July 20, 2012. Relator submitted the February 23, 2012 letter prepared by Steven Altic, D.O., who opined that he was permanently and totally disabled, stating:

I had the pleasure of reevaluating Mr. Crawford on 02/23/2012 with chronic back pain. Recent injections by Dr. Lingam have not helped and he continues to see Dr. Lingam in pain management for medication management. In the past, therapy did not help. He is not really a surgical candidate for the conditions allowed in this claim. In my opinion, he is impaired by his back problems under this claim to the extent that he is permanently totally disabled.

{¶ 18} 8. Relator was examined by Joseph Kearns, D.O. In his September 17, 2012 report, Dr. Kearns identified the allowed conditions in relator's claim, provided his physical findings upon examination, opined that relator's allowed conditions had reached maximum medical improvement ("MMI"), noted that many of relator's allowed

conditions had resolved and there was no impairment attributed to them, and concluded that relator did have a 28 percent whole person impairment, and he could perform at a sedentary level, stating:

> He has had multiple fractures. He has had a failed attempt at a return to work, 10 years after his injury. He has been using a cane although he is not totally cane dependent. He does have a bit of a limp. He has limited mobility to the spine and limited general mobility. On this basis, I would suggest he be limited to sedentary work.

{¶ 19} 9. Relator was also examined by Richard H. Clary, M.D. In his September 12, 2012 report, Dr. Clary identified relator's allowed psychological condition, discussed the mental status examination, and ultimately concluded that relator had a 10 percent impairment and that the allowed psychiatric condition would not cause any limitations or restrictions in his ability to work.

{¶ 20} 10. Relator's application was heard before an SHO on December 12, 2012. The SHO relied on the medical reports of Drs. Kearns and Clary and found that he could perform sedentary work with no additional restrictions due to the allowed psychological condition. Thereafter, the SHO discussed the non-medical disability factors and found that relator was not permanently and totally disabled, stating:

> The Injured Worker has at least an 11th grade education and can read, write, and do basic math. There has been no objective evidence or testing submitted to indicate that his intellect and literacy skills are anything less than consistent with his level of education. Consistent with this, he was found to be of normal or average intelligence by Dr. Howard (8/7/90) and Dr. Greer (3/5/93). An 11th grade education is generally sufficient to learn and perform up through semi-skilled work. This shows that the Injured Worker has the intellect and academic skills to learn and perform entry level unskilled and semi-skilled work. Further, the Injured Worker worked as an auto mechanic for at least five years, a skilled position according to the Dictionary of Occupational Titles (DOT). Therefore, it is found the Injured Worker has also demonstrated the ability to learn a skilled job. (Lewis v. Industrial Commission (1997), 10th Ct. App., No. 96APD04-438). To this extent, the Injured Worker's education and intelligence are found to be assets to retraining/re-employment. (Wood v. Industrial Commission (1997), 78 O.S.3d 414).

The Injured Worker has prior skills as an auto mechanic, skills that would be transferable to sedentary clerical, cashier or receptionist type work at an automobile dealership or garage. Further, his skills and knowledge as a carpenter would be transferable to similar jobs with a carpentry type business. He is capable of using a home computer, which indicates some computer skills that would aid in training for clerical type work. To this extent, his prior work history is found to be an asset to retraining/re-employment.

According to Ewart v. Industrial Commission (1996), 76 O.S.3d 139, the non-existence of transferable skills is not critical when the issue is whether the Injured Worker can be trained. To the extent there may be a lack of transferable skills, it is found the Injured Worker is capable of unskilled and semi-skilled work within the physical restrictions noted above. This finding is based on the fact that, according to the DOT, semi-skilled work only requires up to six months of training while unskilled work only requires up to 30 days of training, often on the job. Further, unskilled work, by its very definition, does not require transferable skills. Therefore, a lack of transferable skills would not rule out unskilled work. Further, an 11th grade education is usually sufficient to learn and perform unskilled and semi-skilled work. At age 57 the Injured Worker has sufficient work life expectancy to complete 30 days to six months of training. Finally, as noted above, the Injured Worker was able to learn and perform up to skilled work in the past. This is supported by the fact he was found to be a candidate for vocational rehabilitation and completed a program in 2008. There are a number of sedentary unskilled jobs that require no more education than that possessed by the Injured Worker. Some examples include: lens inserter optical; jewelry preparer; telephone quotation clerk; order clerk food and beverage; paramutual ticket checker; surveillance system monitor; charge account clerk; and parking garage cashier. Some of these jobs, such as surveillance system monitor, parking garage cashier, paramutual ticket checker, and telephone quotation clerk, would appear to offer a sit/stand option if required. This list is exemplary and not exhaustive. Sedentary semi-skilled cashier jobs within the injured worker's educational level include check-cashing agency cashier and tube room cashier.

It is further noted that although his prior application for permanent total disability, filed 12/2/05, indicates he obtained a GED, the Injured Worker testified that he has not. Therefore, it appears that he has had since April of 2000 to

> obtain his GED to aid in a return to work but has failed to do so.
>
> Based on the above stated law, facts, reports, and analysis, it is found the Injured Worker is capable of sustained gainful employment and, therefore, permanent total disability is DENIED.

(Emphasis sic.)

{¶ 21} 11. Relator filed a request for reconsideration asserting that the SHO failed to discuss relator's extensive efforts at vocational rehabilitation and to find work.

{¶ 22} 12. Relator's request for reconsideration was denied by order of the commission mailed February 26, 2013.

{¶ 23} 13. Thereafter, relator filed the instant mandamus action in this court.

Conclusions of Law:

{¶ 24} Relator contends the commission abused its discretion by failing to discuss his efforts at vocational rehabilitation and attempts to secure employment when the commission denied his application for PTD compensation. Because lack of efforts at rehabilitation can be held against an injured worker who has filed an application for PTD compensation, relator maintains that, where an injured worker has made a good-faith effort to pursue vocational rehabilitation, the commission should consider that as evidence the injured worker cannot perform some sustained remunerative employment.

{¶ 25} The magistrate finds the commission did not abuse its discretion in the present case by not finding that relator's efforts at vocational rehabilitation required discussion or that his efforts weighed in favor of granting his application for PTD compensation.

{¶ 26} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law. *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28 (1983).

{¶ 27} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. *State ex rel.*

*Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 28} The relevant inquiry in a determination of permanent total disability is claimant's ability to do any sustained remunerative employment. *State ex rel. Domjancic v. Indus. Comm.*, 69 Ohio St.3d 693 (1994). Generally, in making this determination, the commission must consider not only medical impairments but also the claimant's age, education, work record and other relevant non-medical factors. *State ex rel. Stephenson v. Indus. Comm.*, 31 Ohio St.3d 167 (1987). Thus, a claimant's medical capacity to work is not dispositive if the claimant's non-medical factors foreclose employability. *State ex rel. Gay v. Mihm*, 68 Ohio St.3d 315 (1994). The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. *State ex rel. Noll v. Indus. Comm.*, 57 Ohio St.3d 203 (1991).

{¶ 29} As an initial matter, the magistrate notes that relator does not challenge the commission's reliance on the reports of Drs. Kearns and Clary to find that relator was capable of sedentary work activity without any limitations caused by his allowed psychological condition. The SHO then considered the effect of the non-medical disability factors and found that relator was capable of performing some sustained remunerative employment. Specifically, the SHO found that relator's age of 57 years was not a barrier to a return to work. Further, the SHO found that relator's 11th grade education and his ability to read, write, and perform basic math was a positive factor in terms of his ability to become re-employed. The SHO discussed relator's prior work history, specifically noting that relator had worked in a skilled position indicated that he had demonstrated the ability to learn a skilled job and that he had some skills which

would transfer to sedentary work.  Further, the SHO did note that relator was found to be a candidate for vocational rehabilitation in 2008 and that he completed that program; however, the SHO noted that although relator had indicated on his application filed in 2005 that he had obtained his GED, relator indicated that he had not and the SHO found that he had the ability to have obtained his GED to aid in a return to work.

{¶ 30} Relator's criticism with the commission's order focuses exclusively on the SHO's failure to discuss his efforts at rehabilitation and his efforts to actually secure employment.  Specifically, relator argues that his vocational rehabilitation file was closed on September 26, 2008 because despite his participation, he had not succeeded in finding work and the case manager concluded that it appeared that he would not be able to obtain and sustain remunerative employment.

{¶ 31} As noted in the findings of fact, relator's vocational case manager noted as follows in the closure report:

> He does have past legal activity which impacts what jobs he can do[.] [H]e does not have a valid Ohio driver's license due to a DUI prior to 2003 nor a vehicle[.] He is not willing to relocate due to local family and desires at least $23/hour in wages[.] He is limited to part time employment[.] * * * The RTW hierarchy was chosen as DJDE as he can not go back to the EOR, the Union Hall, and carpentry is beyond his physical abilities[.] An original plan was written for JSST, Job search, JPS, Case Management, LM, and Bus pass[.] Plan Amendment #1 was written to extend JSST one week due to a problem where COTA messed up the bus pass and he was not able to make JSST meeting[.] Plan Amendment #2 was written to extend job search activities[.] He has some troubles with taking the bus and with elevated blood pressure due to some heat exposure[.] He experienced increased pain levels[.] He had had problems with his phone but got it resolved[.] Plan Amendment #3 was written to continue job search to week 13[.] The week of 7/14, Mr. Crawford had to leave his current housing as it was sold and had to find a new place to live. He had difficulty with his phone during this time but got it fixed[.] He also had some problems with COTA and his bus pass which were then resolved[.]  Plan Amendment #4 was written for extension of job search beyond 13 weeks per chapter 4 guidelines due to the extenuating circumstances of the number of barriers he has such as his limited physical ability, seeking part time work and the need to job search via the bus line[.] The plan

was written for two additional weeks of job search and JPS hours[.] <u>COTA sent him the wrong bus pass and it was never resolved</u> by the end of the plan[.] Changes were made to the resume for his new address[.] The JPS had a death in the family and was out til 8/25/08 but another JPS covered with him[.] He did have two interviews within 15 weeks but did not secure employment[.] He had some problems with his new cell phone and went back to his old number[.]

He is 53 years old with no GED[.] He has spent his life in carpentry which he can not [sic] longer do and has no transferable skills in the sedentary to light strength range[.] He has no drivers license or vehicle and has not worked in the last 12 years[.] His POR has opined that he can only work part time[.] He is in chronic pain and has many physical limitations[.] In spite of participating in vocational rehabilitation programming he has not succeeded[.] At this point it appears he is not able to obtain and sustain remunerative employment[.]

(Emphasis added.)

{¶ 32} A review of the above closure report lists several reasons why relator's rehabilitation efforts were unsuccessful.  Relator did not have a valid Ohio driver's license due to a DUI conviction prior to 2003; he did not have a vehicle; he needed to find a job which was on a bus line; he was not willing to relocate; and he specifically wanted a job paying at least $23 per hour.  Further, it was noted that he had many difficulties attending meetings because of difficulties using his COTA bus pass.  Further, relator found new housing and had phone issues which again compromised his ability to actually participate in the vocational rehabilitation.  It appears that relator had two interviews within a 15-week period which did not result in employment.

{¶ 33} A review of the above closure report does indicate that relator participated in vocational rehabilitation; however, to the extent that relator argues that he made a serious effort at rehabilitation, the magistrate disagrees with relator's assertion that the commission was required to find that he made a serious effort at vocational rehabilitation.  Further, although relator indicates that he received non-working wage loss compensation for 200 weeks and, as such, has proven that he cannot obtain employment, the magistrate specifically notes that none of relator's job search records are before this court to review and, simply because the commission awarded him non-

working wage loss compensation does not automatically entitle him to an award of PTD compensation.

{¶ 34} Relator relies heavily on this court's decision in *State ex rel. Ramsey v. Indus. Comm.,* 10th Dist. No. 99AP-733 (Mar. 30, 2000) ("*Ramsey I*"), affirmed in *State ex rel. Ramsey v. Indus. Comm.,* 91 Ohio St.3d 24 2001 ("*Ramsey II*"). Robert Ramsey was seriously injured in 1994. In 1996, Ramsey filed an application for PTD compensation which was denied. Shortly thereafter, Ramsey submitted to multiple evaluations performed by the commission's professional staff at the J. Leonard Camera Rehabilitation Center. Ramsey participated in the rehabilitation program through December 1997, at which time it was determined that he was an extremely poor candidate for rehabilitation and his filed was closed.

{¶ 35} Ramsey filed a second application for PTD compensation which was denied. The SHO relied on the report of Dr. Turner who concluded that Ramsey was capable of returning to his long-term career as an automobile sales person.

{¶ 36} Ramsey filed a mandamus action here asking whether the absence of any mention of the commission's rehabilitation report of record and the commission's order was a violation of the principle originally set forth in *State ex rel. Fultz v. Indus. Comm.*, 69 Ohio St.3d 327 (1994), and whether the commission's non-medical analysis violated *Noll* because the analysis did not attempt to reconcile the conclusion that Ramsey was capable of sustained remunerative employment with the commission's rehabilitation reports of record.

{¶ 37} This court's magistrate found that the commission's order did not violate the principle of *Fultz* and that the order complied with *Noll.* Specifically, the magistrate noted that, because the commission does not have to list the evidence considered, the presumption of regularity that attaches to commission proceedings gives rise to a second presumption—that the commission indeed considered all the evidence before it. Because the commission's order did not necessarily enumerate the evidence considered, the magistrate found that there was no violation of *Fultz.*

{¶ 38} The magistrate also rejected Ramsey's second argument finding that the commission was not required to explain why it chose not to rely on the rehabilitation

reports. The magistrate also indicated that the commission did not have a duty to address rehabilitation efforts.

{¶ 39} In rejecting the decision of its magistrate, this court stated:

> The staff hearing officer who heard Mr. Ramsey's case did not appear to give any weight to Mr. Ramsey's efforts at rehabilitation. Instead, the staff hearing officer apparently relied solely upon "the objective medical findings of an unbiased examiner."
>
> We do not believe that reeducation and retraining efforts can only be used as a means to punish injured workers on those occasions when a hearing officer feels that the injured worker has failed to exercise his or her best efforts at rehabilitation. The situation where an injured workers has made serious efforts at rehabilitation but has not succeeded should be considered as a factor in favor of granting PTD compensation, especially where, as here, the Bureau of Workers' Compensation's own reports demonstrated a failure to be rehabilitated despite the injured worker's best efforts. Since the record before us indicates that the staff hearing officer did not give appropriate weight to Mr. Ramsey's unsuccessful rehabilitation efforts and the reports from the J. Leonard Camera Rehabilitation Center, a writ of mandamus shall issue.
>
> The order from the staff hearing officer reflects a related flaw, the failure to consider vocational information available in the file. We still believe that the better course of action would be for the commission to list all the reports considered, not just the reports relied upon. Such listing of reports would enable the courts to be assured that all the reports were considered and would avoid the temptation a hearing officer might feel to pick out only the reports of commission specialists for review. Such a temptation would be understandable, given the sheer volume of applications to be considered. However, injured workers whose livelihood depends upon the findings of the commission deserve a thorough review, not just a quick review.
>
> For us, *State ex rel. Fultz v. Indus. Comm.* (1994), 69 Ohio St.3d 327, 631 N.E.2d 1057, was a step in the right direction. Where reports in the file could be determinative, the commission must reflect a review of those reports in the order granting or denying PTD compensation. The order denying PTD compensation for Mr. Ramsey does not reflect

consideration of the vocational reports, but seems to rely almost completely on "the objective medical findings of an unbiased examiner," as noted above. Thus, we find that neither the spirit nor the letter of *Fultz* was honored here.

*Ramsey I,* at ¶ 60.

{¶ 40} This court discussed its decision in *Ramsey 1* again in *State ex rel. Scaggs v. Indus. Comm.,* 10th Dist. No. 02AP-799, 2003-Ohio-1786. This court stated:

[R]elator cites *State ex rel. Ramsey v. Indus. Comm.* (Mar. 30, 2000), Franklin App. No. 99AP-733; and *State ex rel. Burns v. Indus. Comm.,* Franklin App. No. 01AP-1036, 2002-Ohio-2804, in arguing that, where reports in the file could be determinative, the commission's order granting or denying permanent total disability compensation must reflect a review of those reports. However, relator's argument is valid only when the commission provides a list of all evidence considered, and then omits reference to a report that could have been determinative of the issue. In *State ex rel. Lovell v. Indus. Comm.* (1996), 74 Ohio St.3d 250, 252-253, 658 N.E.2d 284, the Supreme Court of Ohio held that the commission has no obligation to identify all of the evidence considered, and when the commission does not provide such a list, there is a presumption that the commission considered all of the evidence before it. That presumption is applicable here, because, as noted by the magistrate, the commission did not list all of the evidence considered.

Furthermore, because the commission is a vocational evaluator with considerable expertise, it may form its own independent opinion without regard to the opinions of vocational experts, e.g., *State ex rel. Jackson v. Indus. Comm.* (1997), 79 Ohio St.3d 261. Therefore, the commission did not need to address the report of Mr. Kilcher in reaching its decision.

*Id.* at ¶ 7-8.

{¶ 41} More recently, this court considered the applicability of its holding in *Ramsey 1* again. In *State ex rel. Brahler v. Kent State Univ.,* 10th Dist. No. 13AP-143, 2013-Ohio-5299, this court stated:

Claimant concedes that the commission is the exclusive evaluator of disability and is not bound to accept vocational

evidence, but argues that here the commission itself made rehabilitation participation a primary concern in its previous denial order, so the commission should be required to address her subsequent rehabilitation.

The magistrate dedicated five pages of her decision addressing the commission's failure to consider her attempts at vocational rehabilitation in its second order. In rejecting claimant's argument, the magistrate cited *State ex rel. Guthrie v. Indus. Comm.,* 133 Ohio St.3d 244, 2012-Ohio-4637, in which the Supreme Court of Ohio held that the fact that the Staff Hearing Officer ("SHO") did not view the worker's rehabilitation efforts favorably does not affect the validity of the order. The court in *Guthrie* reasoned that the commission is exclusively responsible for interpreting the vocational evidence, the rehabilitation division made both favorable and unfavorable comments about the worker's participation, and the commission was permitted to accept the unfavorable comments over the favorable ones. In the present case, the magistrate found that, similar to *Guthrie,* the rehabilitation division made both positive and negative comments concerning claimant's rehabilitation efforts, and the commission could accept the negative comments as the ultimate interpretation of vocational evidence. The magistrate also noted that relator did not attempt vocational rehabilitation from the time she stopped working in 2002 until her first application for PTD was denied in 2010, and then she only participated in vocational rehabilitation for three months. We concur with the magistrate's determinations. Claimant presents no authority for the proposition that the commission is required to address rehabilitation efforts where the commission made rehabilitation participation a concern in a prior denial order. Even under these circumstances, it remains that the commission is the exclusive evaluator of vocational evidence and may believe or disbelieve the vocation evidence submitted.

*Id.* at ¶ 3-4.

{¶ 42} As above noted, this court's holding in *Ramsey I* has been limited. Further, as noted in the findings of fact, although relator contends that he made a serious effort at rehabilitation and that the vocational rehabilitation closure report indicates a failure to be rehabilitated despite his best efforts, the magistrate finds that relator's assertion is not necessarily supported by the report. Relator's participation was

inconsistent due to several factors, including difficulty using public transportation, the fact that he moved, and difficulties with his cell phone. The magistrate finds that relator simply has not demonstrated that the commission abused its discretion in this case.

{¶ 43} As in *State ex rel. Guthrie v. Indus. Comm.,* 133 Ohio St.3d 244, 2012-Ohio-4637, the vocational evidence here has both negative and positive aspects and the commission could accept the negative aspects as the ultimate interpretation of the vocational evidence. The closure report simply is not as favorable as relator asserts. Further, there is no authority for the proposition that the commission is required to discuss rehabilitation efforts where the commission made rehabilitation efforts a concern in a prior order denying PTD compensation. There are several reasons why relator's vocational rehabilitation was unsuccessful, this court cannot review his job search efforts, and relator did not attempt any vocational rehabilitation until fives years after he last worked and only after his first application for PTD compensation was denied.

{¶ 44} Based on the foregoing, it is this magistrate's decision that relator has not demonstrated that the commission abused its discretion in denying his application for PTD compensation and this court should deny relator's request for a writ of mandamus.


/S/ MAGISTRATE
STEPHANIE BISCA BROOKS


**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).