[Cite as *State ex rel. Sun Chem. Corp. v. Indus. Comm.*, 2019-Ohio-222.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel. Sun Chemical Corp., | : | |
| Relator, | : | |
| v. | : | No. 17AP-554 |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

---

## D E C I S I O N

### Rendered on January 24, 2019

---

*Dinsmore & Shohl LLP*, and *Brian P. Perry*, for relator.

[*Dave Yost*]*,* Attorney General, and *Natalie J. Tackett*, for respondent Industrial Commission of Ohio.

*Honerlaw Law Office, LLC*, and *Michael J. Honerlaw*, for respondent Lester R. Haste.

---

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

BRUNNER, J.

{¶ 1}  Respondents, Lester R. Haste and the Industrial Commission of Ohio ("the commission"), object to a decision of a magistrate of this Court recommending a writ of mandamus on behalf of Sun Chemical Corp. ("Sun"), Haste's former employer, to order the commission to vacate its grant of compensation for permanent total disability ("PTD") to Haste, and to reinstate a prior decision of one of its hearing officers that denied PTD to Haste.  We conclude that the commission rightly took jurisdiction and corrected the hearing officer's decision because the hearing officer committed an error of law when the officer completely failed to provide notice in its decision of whether it considered Haste's extensive participation in vocational rehabilitation.  Accordingly, we sustain the objections to the

magistrate's decision, decline to adopt the decision, and deny the petition for writ of mandamus.

## I.  FACTS AND PROCEDURAL POSTURE

{¶ 2}   The parties to this case have essentially stipulated that Haste was injured on three occasions and had claims for temporary disability allowed on each occasion. *Compare* Aug. 7, 2017 Compl. at ¶ 5-7 *with* Aug. 28, 2017 Haste Answer at ¶ 1; Sept. 7, 2017 Commission Answer at ¶ 1-2 (admitting paragraphs 1-10).  Specifically, the parties agreed that:

> Respondent Lester Haste's 1990 claim, BWC Claim No. 90-53008, arises out of an injury which occurred on December 11, 1990, and has been recognized for the conditions "lumbar strain; central L4-5 disc herniation; herniated lumbar disc L5-S1; and post-laminectomy syndrome lumbar L4-5."
>
> Respondent Lester Haste's 2002 claim, BWC Claim No. 02-889878, arises out of an injury which occurred on October 16, 2002, and has been recognized for the conditions: sprain of neck; sprain lumbar region; disc protrusion at C7-T1; and degenerative disc disease at C5-6."
>
> Respondent Lester Haste's 2004 claim, BWC Claim No. 04-890075, arises out of an injury which occurred on October 4, 2004, and has been recognized for the conditions "strain right shoulder; impingement syndrome right shoulder; right rotator cuff strain; and aggravation of pre-existing traumatic arthritis of the acromioclavicular joint of the right shoulder."

(Compl. at ¶ 5-7 (note: paragraphs quoted out of order).)  Despite these injuries, Haste apparently worked until March 28 or 29, 2013.  (Oct. 6, 2017 Stipulation of Evidence at 4, 63.)

{¶ 3}   During 2014 and 2015, Haste was referred to vocational rehabilitation three times and gave serious attempts to it.  (Stipulation of Evidence at 62, 72, 76.)  On the first occasion, an assessment revealed barriers to Haste's participation such as "age, physical limitations, medication use, lack of computer skills and lack of transferable skills."  *Id.* at 65.  Specifically, the assessment showed that he was born on July 1, 1950, had graduated from high school but had not completed education beyond that, was taking several medications, was unable to sit down during the assessment, was released to work only 20 hours per week, and had worked as a laborer his entire working years.  *Id.* at 63-65.  The

rehabilitation closure report included information that Haste could not tolerate the 50 pound lifting requirement to return to work with his original employer (even on light duty), that he had few transferable skills, and that he was considering a radiofrequency ablation in the near future. *Id.* at 68. The report indicated that the file was closed on May 1, 2014 due to, "lack of plan potential." *Id.*

{¶ 4} In August 2014, Haste was again referred to vocational rehabilitation. *Id.* at 71-72. However, before substantially any activity took place on the referral, the managed care organization concluded that rehabilitation was not feasible because there had been "no change in circumstances indicating a new reason to believe that services would result in employment at this time." *Id.* at 72.

{¶ 5} In February 2015, Haste was referred to vocational rehabilitation for the third and final time. *Id.* at 73. The initial assessment again included information that he was unable to sit for the entire assessment, was on several medications, was a high school graduate but had completed no further education, had worked solely as a laborer, and was born in 1950. *Id.* at 77-78. This time, however, a plan was created and Haste pursued it. *Id.* at 93-97.

{¶ 6} In the course of the plan, in addition to many other requirements, Haste underwent a situational assessment that tested his ability to work light assembly jobs. The assessment report particularly noted an excellent work ethic, a positive attitude, and that he arrived 15 minutes early for each shift. *Id.* at 84-85. The report further indicated that Haste remained focused on tasks and met employer standards for work quality, but due to the need to frequently get up and move in order to manage pain, he was unable to keep pace. *Id.* at 85-86. In keeping with the plan, Haste also underwent several Job Seeking Skills Training sessions. *Id.* at 101-05. The report from this series of sessions noted that Haste had appropriate basic knowledge of attire, interview technique, punctuality, and other traits to seek a job. *Id.* at 101-02. However, it also noted that he was 64 years old, had completed high school with no additional training, had very limited computer skills (and possessed no home computer), was able to type only with 2 fingers, had to stand approximately every 20 minutes during the meeting to relieve discomfort, and, due to reported hearing loss, would find it difficult to use the telephone or work in a noisy environment. *Id.* at 102-03.

{¶ 7}   According to the plan, Haste applied for many jobs and documented the applications in a series of reports.  *Id.* at 129-39, 142-49.  In August 2015, during the job search, Haste's physician provided an updated MEDCO-14 in which the physician stated that Haste could work 2-3 hours per day and a total of 10 hours per week.  *Id.* at 140-41.  In November 2015, the vocational rehabilitation file was closed because Haste had used all available plan resources and engaged in job seeking for 20 weeks, yet had not been successful in obtaining a 10-hour-per-week job.  *Id.* at 110-12.

{¶ 8}   Just over three months later, on March 9, 2016, a district hearing officer ("DHO") for the commission held a hearing, followed by a decision in which the DHO concluded that Haste had reached maximum medical improvement ("MMI") and the DHO terminated temporary total disability compensation.  *Id.* at 113-14.  On April 28, 2016, a staff hearing officer ("SHO") affirmed.  *Id.* at 115-16.  Thereafter, on May 26, 2016, Haste applied for PTD.  *Id.* at 1-10.

{¶ 9}   Included in Haste's PTD application was a report from Haste's physician, Dr. Simmons, stating that Haste could sit, stand, or walk for 1 hour at a stretch, could stand and walk for 1 hour total in an 8-hour day, and could sit for 3 hours total in an 8-hour day. *Id.* at 9.  The same physician stated his opinion that Haste could occasionally carry 6 to 10 pounds, could occasionally lift up to 20 pounds, and could occasionally bend, squat, or reach.  *Id.*   This physician concluded that, in light of these restrictions, Haste was permanently and totally disabled.  *Id.*   Haste was also examined by independent medical examiners hired by the commission and Sun.  The commission's doctor, Dr. Wunder, concluded that Haste was 33 percent impaired and able to work in sedentary occupations. *Id.* at 21.  Sun's doctor, Dr. Rozen, found that Haste could sit for 30 minutes at a time before taking a break to walk or stand and could lift 5 pounds frequently and 10 pounds occasionally.  (Nov. 17, 2017 Supp. Stipulation of Evidence at 156.)  Dr. Rozen concluded Haste could perform remunerative sedentary work that permitted him to sit in an ergodynamically neutral position (and also to move occasionally) such as computer or telephone work.  *Id.* at 156-57.  Rozen specifically detailed positions Haste could not be asked to assume such as turning his head or using his upper right extremity above chest level or in a plane away from the side of his body.  *Id.* at 157.

{¶ 10} In addition to these physician reports, Sun submitted the report of a vocational consultant. While summarily noting that Haste had unsuccessfully attempted vocational rehabilitation, the consultant opined that one barrier to Haste becoming employed was his adoption of a "retired and nonworking lifestyle with no interest or motivation in returning to work." (Stipulation of Evidence at 28.) The consultant further opined that what was needed was for Haste to "develop motivation to reenter the labor market and embark on a good faith job search." *Id.* at 29. The consultant went on to speculate that Haste could function as an order clerk, call center clerk, dispatcher, or other similar occupations and could do so without vocational training in light of his ability to learn entry level jobs. *Id.*

{¶ 11} On November 16, 2016, a hearing officer of the commission held a hearing and, on November 25, issued a decision denying PTD compensation to Haste. *Id.* at 42-44. The hearing officer recognized that Haste had sustained multiple on-the-job injuries causing him substantial deficits and that he had reached MMI. *Id.* at 42-43. The officer also noted that Haste was then 66 years old and was a high school graduate who could read, write, and perform basic math. *Id.* at 43. Despite Haste's physical limitations, the hearing officer opined that he would be capable of undergoing on-the-job training to learn a new field and would be capable of sedentary work. *Id.* On this basis, the hearing officer denied PTD. *Id.* at 42-43. The hearing officer neither mentioned nor alluded to the fact that Haste had undergone a program of vocational rehabilitation, making extensive effort, without positive result. *Id.* at 42-44.

{¶ 12} By letter filed on December 13, 2016, Haste sought reconsideration of the denial, citing the hearing officer's complete failure to mention whether the officer had considered Haste's participation in vocational rehabilitation. *Id.* at 45-47. Sun filed a memorandum in opposition on December 16, 2016. *Id.* at 48-51. Approximately one month later, on January 14, 2017, the commission set the matter for a hearing on two issues: whether the commission should exercise continuing jurisdiction pursuant to R.C. 4123.52 and whether PTD compensation should have been granted. *Id.* at 52. The commission explained that it would hold a hearing on both issues for economy reasons, but would only consider the merits in its ultimate decision if, after taking the matter under advisement, it decided it had grounds to exercise continuing jurisdiction. *Id.*

{¶ 13} The commission held such a hearing on February 28, 2017 and issued a decision on June 13, 2017. *Id.* at 55-58. At the outset, the commission decided that it would exercise continuing jurisdiction because Haste had shown that the hearing officer's decision contained a "clear mistake of law" in that it failed to discuss or consider the vocational rehabilitation Haste underwent. *Id.* at 55. The commission granted reconsideration and vacated the hearing officer's decision. *Id.* It considered the merits of the PTD claim and awarded PTD from July 27, 2016, the date of Dr. Rozen's report. *Id.* at 56. The commission found that Dr. Rozen's opinion on how long Haste could sit (30 minutes) and the specific requirements of how he had to sit (without turning his head or using his right arm on a plane away from his body or higher than chest level) resulted in limitations such that Haste was unable to perform sedentary work as defined in Ohio Adm.Code 4121-3-34(B)(2)(a). *Id.* at 56-57. Taken in conjunction with the fact that Haste had no skills or experience transferable to sedentary occupation and because he had tried and not succeeded in vocational rehabilitation to secure a job within his physical limitations, the commission approved PTD. *Id.* at 56-58.

{¶ 14} On August 7, 2017, Sun filed a complaint for a writ of mandamus with this Court. (Compl.) After answers and briefing by both parties, a magistrate of this Court issued a decision recommending that a writ of mandamus issue. (App'x.) The magistrate stated that the hearing officer was not required to discuss Haste's participation in vocational rehabilitation and that there was no evidence that the hearing officer failed to consider Haste's participation. (App'x at 25.) The magistrate therefore determined that the commission had abused its discretion in exercising continuing jurisdiction. *Id.* at 26. Though the magistrate did not reach the question of whether PTD should have been awarded, the magistrate noted that the vocational consultant hired by Sun had identified several jobs that Haste would be capable of performing. *Id.* But the magistrate decision fell short of mentioning or considering Dr. Rozen's report, even though that report was jointly submitted by the parties as a supplement to the stipulated record before the time for briefing had expired and had been filed approximately three months before the magistrate issued her decision.

{¶ 15} Both Haste and the commission objected. (Feb. 22, 2018 Haste Objs.; Mar. 7, 2018 Commission Objs.) Sun responded in opposition to both sets of objections. (Mar. 6,

2018 Memo. Contra; Mar. 14, 2018 Memo. Contra.) The matter is therefore fully briefed and ripe for decision by a panel of judges of this Court.

## II. DISCUSSION

### A. Introduction

{¶ 16} When reviewing objections to the decision of a magistrate, we "undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law." Civ.R. 53(D)(4)(d); see also App.R. 34(A) and (C). Haste and the commission both argue that the magistrate erred in holding that the commission improperly exercised continuing jurisdiction because it found the hearing officer's failure to consider Haste's vocational rehabilitation efforts an error of law. Haste and the commission argue that the magistrate characterized the hearing officer's failure to consider vocational rehabilitation as a legitimate evidence-weighing choice rather than a failure to consider the statutory factors set forth in Ohio Adm.Code 4121-3-34(D). (Haste Objs. at 1, 3-4; Commission Objs. at 2, 8.) We agree.

{¶ 17} Sun argues that the hearing officer was under no obligation to enumerate all the items of evidence the officer reviewed and that the hearing officer considered what the officer was obligated by law to consider. *See, e.g.*, Mar. 6, 2018 Memo. Contra at 2, 6, 9. The commission and we disagree that such a review was enough. To assume that the significant evidence of Haste's vocational rehabilitation efforts, though listed as evidence but not discussed in denying PTD, was considered among the factors required of the hearing officer, is inapposite to the requirements of the commission's administrative rules that all factors be considered. Ohio Adm.Code 4121-3-34(D)(2)(b) and (D)(3)(g). As we see it, the government owes to the public a certain fundamental fairness that can even be characterized as fealty in exercising powers delegated to it by the people. It is not permitted to in effect "hide the ball" of power in exercising it.

{¶ 18} The longstanding case of *Cunningham v. Jerry Spears Co.*, 119 Ohio App. 169, 174 (10th Dist.1963) illustrates this point. In *Cunningham*, we held that a public board, "in performing its public function of passing on claims, is to act to insure that an adequate basis for decision exists" and "a decision made without a reasonable basis for decision is an arbitrary one." *Id.* Relating this concept to Haste's case is entirely consistent with the mandate of the Ohio Administrative Code concerning the review of PTD claims contained in Ohio Adm.Code 4121-3-34(D)(2)(b) and (D)(3)(g). These administrative rules

requiring consideration of all factors relating to "whether the injured worker may return to the job market by using past employment skills or those skills which may be reasonably developed." Ohio Adm.Code 4121-3-34(D)(2)(b). Simply put, the claimant deserves to know why his application for PTD was denied. Concomitantly, an employer likewise deserves to know why an application for PTD was granted. *State ex rel. Sheppard v. Indus. Commn.*, 139 Ohio St.3d 223, 2014-Ohio-1904, ¶ 10, 17-22.

{¶ 19} The record reveals, and we hold as a matter of law, that the hearing officer failed to provide an adequate basis for the decision issued that set forth consideration of all required factors according to Ohio Adm.Code 4121-3-34(D)(2)(b) and (D)(3)(g). The first rule requires that "all other factors" must be considered, including non-medical factors, contained in the record and that "might be important to the determination as to whether the injured worker may return to the job market by using past employment skills or those skills which may be reasonably developed." Ohio Adm.Code 4121-3-34(D)(2)(b). The second rule, Ohio Adm.Code 4121-3-34(D)(3)(g), also requires that the hearing officer must review "all relevant factors in the record that may affect the injured worker's ability to work." Clearly, efforts at vocational rehabilitation must be considered. In Haste's case, the record demonstrates that Haste made considerable efforts in this regard that were not addressed and analyzed as part of the hearing officer's determination. Accordingly, there existed an error of law necessitating the commission's exercise of continuing jurisdiction for correction.

**B. Legal requirements for a writ of mandamus**

{¶ 20} In reaching our decision in mandamus, we apply this law in the context of the legal standard of review of such a petition. "[I]n order for a writ of mandamus to issue the relator must demonstrate (1) that he has a clear legal right to the relief prayed for, (2) that respondents are under a clear legal duty to perform the acts, and (3) that relator has no plain and adequate remedy in the ordinary course of the law." (Citations omitted.) *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28, 29 (1983); *see also, e.g.*, *State ex rel. Kerns v. Simmers*, 153 Ohio St.3d 103, 2018-Ohio-256, ¶ 5. Neither party argues that Sun has an adequate remedy in the ordinary course of the law. Hence, the key issue in this case for mandamus is whether Sun had a "clear legal right" to insist that the commission perform a "clear legal duty" by abstaining from exercising continuing jurisdiction. *Id.*

{¶ 21} "The jurisdiction of the industrial commission * * * over each case is continuing, and the commission may make such modification or change with respect to former findings or orders with respect thereto, as, in its opinion is justified."  R.C. 4123.52(A).  Notwithstanding this broad statutory grant of power to reconsider its prior decisions, this district appellate court and the Supreme Court of Ohio have held that "continuing jurisdiction can only be invoked when one of the following requirements has been met: (1) new and changed circumstances, (2) fraud, (3) clear mistake of fact, (4) clear mistake of law, and (5) error by an inferior tribunal."  *State ex rel. Robertson v. Indus. Comm.*, 10th Dist. No. 13AP-77, 2014-Ohio-2417, ¶ 7, citing *State ex rel. Gobich v. Indus. Comm.*, 103 Ohio St.3d 585, 2004-Ohio-5990, ¶ 14.

{¶ 22}  Here, the commission explained that it was exercising continuing jurisdiction due to a "clear mistake of law" in the hearing officer's decision.  (Stipulation of Evidence at 55.)  Specifically, the commission found a clear mistake of law in that the hearing officer failed to discuss and consider Haste's vocational rehabilitation efforts and lack of transferrable skills to perform sedentary work.  *Id.*  The magistrate in her decision disagreed, finding that while the hearing officer did not discuss Haste's participation in vocational rehabilitation, the hearing officer "was not required to do so, and there [wa]s no evidence in the record [that] the [hearing officer] failed to consider the same."  (App'x at ¶ 50.)

{¶ 23}  "[N]on-medical factors shall be considered by," a hearing officer deciding an application for PTD who finds (as was true in this case) that the "injured worker, based on the medical impairment resulting from the allowed conditions is unable to return to the former position of employment but may be able to engage in sustained remunerative employment."  Ohio Adm.Code 4121-3-34(D)(2)(b).  The administrative code section requiring consideration of non-medical factors specifically requires:

> The non-medical factors that are to be reviewed are the injured worker's age, education, work record, **and** *all other factors*, such as physical, psychological, and sociological, that are contained within the record *that might be important to the determination as to whether the injured worker may return to the job market by using past employment skills or those skills which may be reasonably developed.*

(Emphasis added.) *Id.* In addition to the information that must be considered in cases where a hearing officer decides that the injured worker can engage in sustained remunerative employment, "all applications for permanent total disability" require consideration of the factors listed in Ohio Adm.Code 4121-3-34(D)(3)(a) through (i). Ohio Adm.Code 4121-3-34(D)(3). Division (g) of Ohio Adm.Code 4121-3-34(D)(3) also requires consideration of "all relevant factors in the record that may affect the injured worker's ability to work."

{¶ 24} We read "employment skills or those skills which may be reasonably developed" to include vocational rehabilitation, and according to the rule, specific consideration of this must take place, especially when the record contains much in the way of evidence concerning this factor. Ohio Adm.Code 4121-3-34(D)(2)(b). This is true even though "vocational factors" as listed in paragraph (B) of Ohio Adm.Code 4121-3-34 does not per se list vocational rehabilitation. This is because the hearing officer is required under the rule to consider evidence in the record that "might be important" to the determining "whether the injured worker may return to the job market by using past employment skills or those skills which may be reasonably developed." Ohio Adm.Code 4121-3-34(D)(2)(b). Because of the variances in work, work settings, jobs, job requirements, and the organic differences endemic to the human physical condition, it would be nonsensical for the rule to include so many factors that the absence of one could be taken to have greater import in its conspicuous absence. We find that the terminology used in Ohio Adm.Code 4121-3-34(D)(2)(b) encompasses vocational rehabilitation as a factor when there is significant evidence of it in an injured worker's attempt to maintain employment despite his or her injury. Haste's documented and significant good-faith participation in vocational rehabilitation is directly relevant to "factors in the record that may affect the injured worker's ability to work." Ohio Adm.Code 4121-3-34(D)(3)(g). Thus, as a matter of law, when significant evidence of participation in vocational rehabilitation exists as evidence in the record, it must be considered and addressed in a decision issued under Ohio Adm.Code 4121-3-34(D)(2)(b) and (D)(3)(g).

{¶ 25} The magistrate relied on the principle that a hearing officer is not required to accept the conclusions of a vocational consultant and cited a case in which a would-be claimant challenged a hearing officer's decision for having "unfairly discounted [her]

efforts" in vocational rehabilitation.  (App'x at ¶ 51.) S*ee also State ex rel. Guthrie v. Indus. Comm.*, 133 Ohio St.3d 244, 2012-Ohio-4637, ¶ 10.  But this is not a case like *Guthrie*, in which the hearing officer "discounted" or found less than credible the would-be claimant's efforts in vocational rehabilitation.  In this case, the hearing officer's decision reads as if the hearing officer made an effort to mention all the significant reports in evidence yet simply overlooked or ignored the fact that Haste had participated in vocational rehabilitation. (Stipulation of Evidence at 42-44.)  In short, the hearing officer did not consider but then discounted Haste's participation based on valid evidence—weighing reasons.  Rather, the hearing officer in her report gave no consideration to Haste's vocational rehabilitation history.  And examination of the facts of *Guthrie* quickly differentiates that case from this case and provides insight into why in Guthrie's case the hearing officer would have construed Guthrie's participation in vocational rehabilitation against her.[1]  In Haste's case, the vocational participation reports consistently described Haste as punctual, neatly attired, positive, having a good work ethic, and suggested he could not find work because he was too injured to do the only work he knows how to do – "[h]eavy work" to "[v]ery heavy work."  *See* Ohio Adm.Code 4121-3-34(B)(2)(d) and (e); Stipulation of Evidence at 84-86, 101-03.  This is the type of evidence that falls within the factors we have discussed in the Ohio Administrative Code that must be considered by the hearing officer.

{¶ 26} Where a hearing officer completely fails to consider a required factor, the Supreme Court of Ohio has held that the commission may rightly invoke continuing jurisdiction to correct a clear mistake of law.  *State ex rel. Mackey v. Ohio Dept. of Edn.*, 130 Ohio St.3d 108, 2011-Ohio-4910, ¶ 5.  In *Mackey*, the hearing officer had failed to address whether the claimant's retirement was voluntary or involuntary.  *Id. in passim*. The Supreme Court agreed that the commission properly invoked continuing jurisdiction in order to reconsider the hearing officer's decision and find that the retirement was voluntary. *Id.*  In a somewhat similar case, the Supreme Court approved of the industrial commission's decision to invoke continuing jurisdiction (on the basis that there was a clear mistake of law) so as to reconsider a hearing officer's decision that failed to explicitly

---

[1] For example in *Guthrie*, the closure report said that Guthrie was, "reluctant to change routines and habits even when they [we]re unproductive or counterproductive. She tended to contact many employers regarding jobs for which she [wa]s not qualified. * * * She discard[ed] many suggestions and harbor[ed] many self-defeating attitudes." *Guthrie* at ¶ 3.

address an employer's argument regarding an intervening injury. *Sheppard* at ¶ 17-22. The Supreme Court specifically noted with approval that this Court had "refused to assume that the hearing officer's failure to address the intervening-injury argument meant that he had rejected it." *Id.* at ¶ 10. And this was despite the fact that consideration of an intervening injury was not expressly required by any statute or rule. The Supreme Court held that because it was implicit in other required considerations, the hearing officer should have considered it and that the failure to do so was a "clear mistake of law." *Id.* at ¶ 19-20, 22.

{¶ 27} Sun argues and the magistrate concludes in her decision that the hearing officer was not required to explicitly consider Haste's participation in vocational rehabilitation and that the hearing officer's silence on the matter indicated that the officer considered and rejected the importance of such evidence. *Mackey*, *Sheppard*, and Ohio Adm.Code 4121-3-34(D)(2)(b) and (D)(3)(g) suggest otherwise. We therefore do not find those arguments and conclusions to be well-taken. The hearing officer committed an error of law when the officer failed to consider what she was required by rule to consider and the commission rightly exercised continuing jurisdiction. There is no basis for issuing a writ of mandamus.

## III. CONCLUSION

{¶ 28} We sustain the objections of Haste, decline to adopt the magistrate's decision, and also deny the petition for a writ of mandamus. The decision of the Industrial Commission of Ohio issued on June 13, 2017 stands.

*Objections sustained;*
*petition for writ of mandamus denied.*

TYACK, J., concurs.
BROWN, J, dissents.

BROWN, J., dissenting.

{¶ 29} While I agree the commission is required to review all relevant evidence, including efforts at rehabilitation, in determining whether a claimant is capable of sustained remunerative employment, the commission "is not required to identify or explain the evidence it did not rely upon or why one piece of evidence was considered more persuasive than another." *State ex rel. Packaging Corp. of Am. v. Indus. Comm.,* 139 Ohio St.3d 591, 2014-Ohio-2871, ¶ 26, citing *State ex rel. Bell v. Indus. Comm.,* 72 Ohio St.3d 575, 577 (1995). Rather, where the commission lists "only the evidence relied upon,

omission does not raise the presumption that the evidence was overlooked." *State ex rel. Rothkegel v. Westlake,* 88 Ohio St.3d 409, 410 (2000). *See also State ex rel. Scaggs v. Indus. Comm.,* 10th Dist. No. 02AP-799, 2003-Ohio-1786, ¶ 7 (where the commission did not list all of the evidence considered, there was a presumption the commission considered all the evidence before it, including the report of vocational expert). Here, because the commission's staff hearing officer listed only the evidence on which the order was based "the presumption of regularity controls." *State ex rel. Lovell v. Indus. Comm.,* 74 Ohio St.3d 250, 253 (1996). Accordingly, I would adopt the magistrate's decision and grant the requested writ of mandamus. I therefore respectfully dissent.

—————————————

APPENDIX

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel. Sun Chemical Corp., | : | |
| Relator, | : | |
| v. | : | No. 17AP-554 |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

## M A G I S T R A T E ' S   D E C I S I O N

### Rendered on February 9, 2018

*Dinsmore & Shohl LLP*, and *Brian P. Perry*, for relator.

*Michael DeWine,* Attorney General, and *Natalie J. Tackett*, for respondent Industrial Commission of Ohio.

*Honerlaw Law Office, LLC*, and *Michael J. Honerlaw*, for respondent Lester R. Haste.

IN MANDAMUS

{¶ 30} Relator, Sun Chemical Corp., has filed this original action requesting this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order wherein the commission exercised its continuing jurisdiction and thereafter granted permanent total disability ("PTD") compensation to Lester R. Haste ("claimant"), and ordering the commission to reinstate the previous order which denied claimant PTD compensation.

Findings of Fact:

{¶ 31} 1. Claimant has sustained three separate work-related injuries during the course of his employment with relator (1990, 2002, and 2004). Claimant's workers' compensation claims have been allowed for the following conditions:

> 90-53008: Lumbar strain; central L4-L5 disc herniation; herniated lumbar disc L5-S1; post laminectomy syndrome lumbar L4-L5.
>
> 02-889878: Sprain of neck; sprain lumbar region; disc protrusion at C7-T1; degenerative disc disease at C5-6.
>
> 04-890075: Strain right shoulder; impingement syndrome right shoulder; right rotator cuff strain and aggravation of pre-existing traumatic arthritis of the acromioclavicular joint of right shoulder.

{¶ 32} 2. Following each injury, claimant was able to return to work. Eventually, claimant was performing light-duty work until relator no longer had such work available.

{¶ 33} 3. Claimant last worked on March 29, 2013.

{¶ 34} 4. The only surgical procedures claimant had performed were in the 1990 claim allowed for lumbar spine conditions. The first occurred in 1992: lumbar interbody fusion, diskectomy, and lumbar laminectomy. In 2013 and 2014, claimant had procedures involving a spinal cord stimulator.

{¶ 35} 5. Claimant was referred for vocational rehabilitation. Initially, his file was closed on May 5, 2014 due to a lack of plan potential. The second time relator's file was closed by letter dated August 29, 2014 because there were no changes in his circumstances indicating a reason to believe that services would result in employment. The third time claimant's file was closed on November 30, 2015. This time claimant had participated in several months of vocational rehabilitation which included an extensive period of time looking for a job. Claimant was unable to secure employment.

{¶ 36} 6. Claimant filed his application for PTD compensation on May 27, 2016. According to his application, claimant was 65 years of age, had graduated from high school, and could read, write, and perform basic math. Claimant's work history consisted of work as a laborer. Further, claimant was receiving Social Security Disability payments.

{¶ 37} 7. Claimant's application was supported by the May 23, 2016 physical capacities evaluation of Mitchell Simons, M.D., who opined that claimant could sit, stand, and walk for 1 hour at a time and 1 hour each day, and could sit for 3 hours at a time or 3 hours per day; claimant could occasionally lift up to 20 pounds but could not lift more than that; and claimant could occasionally carry up to 10 pounds but could not carry more than that. Claimant could use his hands for repetitive actions such as simple grasping and fine manipulation but not for pushing and pulling of arm controls and was not able to use either his right or his left foot for repetitive movement. Claimant could occasionally bend, squat, and reach but was prohibited from crawling and climbing. Dr. Simons opined that he was permanently and totally disabled.

{¶ 38} 8. Claimant was examined by Steven S. Wunder, M.D. In his September 1, 2016 report, Dr. Wunder identified the allowed conditions in claimant's claim, identified and discussed the medical records which he reviewed, provided physical findings on examination, and ultimately concluded that claimant had a 33 percent whole person impairment as a result of the allowed conditions and was capable of performing work at a sedentary level.

{¶ 39} 9. A vocational report was prepared by Howard L. Caston, Ph.D. In his October 10, 2016 report, Dr. Caston noted that, although Dr. Simons indicated claimant was permanently and totally disabled, the functional restrictions he provided were essentially consistent with sedentary work activity. Dr. Caston noted claimant performed general labor work and had not acquired any significant skills that would be transferrable to office or clerical work activity. With claimant's 12th grade education, Dr. Caston indicated his education and work history demonstrate the capability of learning entry-level jobs consistent with his functional capacities. Ultimately, Dr. Caston concluded claimant was capable of engaging in some sustained remunerative employment and attached a list of several jobs claimant could perform.

{¶ 40} 10. Claimant's application was heard before a staff hearing officer ("SHO") on November 16, 2016. The SHO relied on the medical report of Dr. Wunder and concluded claimant was capable of performing a full range of sedentary occupations. The SHO considered claimant's age of 66 years to be a negative factor, his high school education to be a positive factor, and his work history as a general laborer and assembly- line worker to

be neutral. Ultimately, the SHO concluded claimant would be capable of undergoing on the job training and would be able to learn new work rules and procedures necessary to return to the workforce in a new field and denied his application for PTD compensation.

{¶ 41} 11. Claimant filed a motion for reconsideration. In an interlocutory order, the commission determined claimant had presented evidence of sufficient probative value to warrant adjudication of the request for reconsideration regarding an alleged presence of a clear mistake of fact, specifically "it is alleged the Staff Hearing Officer failed to consider the Injured Worker's attempts at vocational rehabilitation and the reason the vocational case was closed."

{¶ 42} 12. A hearing was held before the commission on February 28, 2017. At that time, the commission determined a clear mistake of law existed:

> After further review and discussion, it is the finding of the Industrial Commission the Injured Worker has met his burden of proving the Staff Hearing Officer order, issued 11/25/2016, contains a clear mistake of law of such character that remedial action would clearly follow. Specifically, the Staff Hearing Officer failed to discuss and consider the Injured Worker's three vocational rehabilitation attempts and the Injured Worker's lack of transferrable skills to perform sedentary work. Therefore, the Commission exercises continuing jurisdiction pursuant to R.C. 4123.52and *State ex rel. Nicholls v. Indus. Comm.*, 81 Ohio St.3d 454, 692 N.E.2d 188 (1998), *State ex rel. Foster v. Indus. Comm.*, 85 Ohio St.3d 320, 707 N.E.2d 1122 (1999), and *State ex rel. Gobich v. Indus. Comm.*, 103 Ohio St.3d 585, 2004-Ohio-5990, 817 N.E.2d 398, in order to correct this error.

{¶ 43} 13. Thereafter, the commission determined claimant was able to perform sedentary work with certain restrictions. The commission found claimant's age to be a negative factor and his high school education to be positive factor. Regarding his work history, the commission noted that it was a negative vocational factor since it provided claimant with no transferrable skills for sedentary work. Thereafter, the commission discussed claimant's efforts at rehabilitation, stating:

> The Commission also relies upon the fact the Injured Worker made three attempts to complete vocational rehabilitation in order to acquire employment within his physical capacity. On 05/01/2014, the Injured Worker's vocational rehabilitation file was closed based upon the lack of plan potential. Because

the Injured Worker's vocational rehabilitation file was closed since the Injured Worker could not tolerate the 50-pound lifting requirement of his job, there was a recommendation for further physical therapy. The Injured Worker was unable to return to work with the Employer, and the Injured Worker had a lack of transferrable skills. On 08/29/2014, the Injured Worker's vocational rehabilitation file was closed a second time after it was determined the Injured Worker was not ready for vocational rehabilitation services at that time since there was no change in circumstances to believe services would result in employment. On 11/23/2015, the Injured Worker's vocational rehabilitation file was closed a third time after 33 weeks of participation in a vocational rehabilitation plan, which included a situational work assessment at Goodwill Industries in a production line position. The Injured Worker was unable to perform the production line work without taking many breaks and complaints of pain. The Injured Worker then performed 20 weeks of job searches but was not able to secure a job within his physical limitations as set forth by the 08/12/2015 MEDCO-14 Physician's Report of Work Ability from Mitchell Simons, M.D., who opined the Injured Worker was limited to working only two to three hours a day for ten hours a week. The vocational rehabilitation case manager closed the Injured Worker's vocational rehabilitation file since the Injured Worker exhausted all planable [sic] services without securing a job. The Injured Worker also completed two computer classes in 2015 in order to learn new skills. Despite weeks of job search efforts, the Injured Worker could not secure employment within his physical limitations. The Commission finds the Injured Worker exhausted job search efforts during vocational rehabilitation without securing employment.

The Commission finds the Injured Worker is rendered permanently and totally disabled from sustained remunerative employment based upon Dr. Rozen's 07/27/2016 Opinion of the Injured Worker's physical limitations in combination with the Injured Worker's age, lack of sedentary work experience, and lack of transferable skills. The Commission, therefore, finds the allowed conditions from the three industrial injuries render the Injured Worker permanently and totally disabled.

14. Thereafter, relator filed the instant mandamus action in this court.

Conclusions of Law:

{¶ 44} For the reasons that follow, it is this magistrate's decision that this court should issue a writ of mandamus.

{¶ 45} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law. *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28 (1983).

{¶ 46} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 47} Relator argues the commission abused its discretion when it exercised its continuing jurisdiction on grounds there was a clear mistake of law; specifically, that the SHO failed to consider claimant's attempts at vocational rehabilitation. Relator asserts there is no evidence in the record that the SHO did not consider claimant's rehabilitation efforts.

{¶ 48} Pursuant to R.C. 4123.52, "[t]he jurisdiction of the industrial commission and the authority of the administrator of workers' compensation over each case is continuing, and the commission may make such modification or change with respect to former findings or orders with respect thereto, as, in its opinion is justified." In *State ex rel. B & C Machine Co. v. Indus. Comm.*, 65 Ohio St.3d 538, 541-42 (1992), the court examined the judicially-

carved circumstances under which continuing jurisdiction may be exercised, and stated as follows:

> R.C. 4123.52contains a broad grant of authority. However, we are aware that the commission's continuing jurisdiction is not unlimited. See, *e.g., State ex rel. Gatlin v. Yellow Freight System, Inc.* (1985), 18 Ohio St.3d 246, 18 OBR 302, 480 N.E.2d 487 (commission has inherent power to reconsider its order for a reasonable period of time absent statutory or administrative restrictions); *State ex rel. Cuyahoga Hts. Bd. of Edn. v. Johnston* (1979), 58 Ohio St.2d 132, 12 O.O.3d 128, 388 N.E.2d 1383 (just cause for modification of a prior order includes new and changed conditions); *State ex rel. Weimer v. Indus. Comm.* (1980), 62 Ohio St.2d 159, 16 O.O.3d 174, 404 N.E.2d 149 (continuing jurisdiction exists when prior order is clearly a mistake of fact); *State ex rel. Kilgore v. Indus. Comm.* (1930), 123 Ohio St. 164, 9 Ohio Law Abs. 62, 174 N.E. 345 (commission has continuing jurisdiction in cases involving fraud); *State ex rel. Manns v. Indus. Comm.* (1988), 39 Ohio St.3d 188, 529 N.E.2d 1379 (an error by an inferior tribunal is a sufficient reason to invoke continuing jurisdiction); and *State ex rel. Saunders v. Metal Container Corp.* (1990), 52 Ohio St.3d 85, 86, 556 N.E.2d 168, 170 (mistake must be "sufficient to invoke the continuing jurisdiction provisions of R.C. 4123.52"). Today, we expand the list set forth above and hold that the Industrial Commission has the authority pursuant to R.C. 4123.52to modify a prior order that is clearly a mistake of law.

*Id.* at 541.

{¶ 49} In *State ex rel. Gobich v. Indus. Comm.*, 103 Ohio St.3d 585, 2004-Ohio-5990, the Supreme Court of Ohio specifically noted that, when reviewing the commission's decision to exercise its continuing jurisdiction:

> Two questions arise: (1) Was there a mistake? (2) If so, was it clear? On close examination, it appears that, regardless of how the bureau tried to characterize it, its complaint with the SHO's order was really an evidentiary one: the bureau produced evidence that it believed established a capacity for sustained remunerative employment, and the SHO found otherwise, [*State ex rel. Royal v. Indus. Comm.*, 95 Ohio St.3d 97, (2002)], however, has specifically stated that a legitimate disagreement as to evidentiary interpretation does not mean that one of them was mistaken and does not, at a minimum, establish that an error was clear. *Id.*, 95Ohio St.3d at 100, 766 N.E.2d 135.

*Id.* at ¶ 17.

{¶ 50} When considering the SHO's order, the magistrate is cognizant of the fact the SHO was required to state the evidence relied on and provide a brief explanation for the determination. Here, there are no inaccuracies in the SHO's order. The SHO relied on the medical report of Dr. Wunder to conclude claimant could perform sedentary work and then discussed and analyzed the non-medical disability factors and concluded claimant was capable of performing some sustained remunerative employment. Although the SHO did not discuss claimant's participation in vocational rehabilitation, the SHO was not required to do so, and there is no evidence in the record the SHO failed to consider the same.

{¶ 51} As noted previously, the SHO is considered the exclusive evaluator of disability and, further, is not bound to accept the conclusions of a different vocational consultant. *State ex rel. Jackson v. Indus. Comm.*, 79 Ohio St.3d 266 (1997). In *State ex rel. Guthrie v. Indus. Comm.*, 133 Ohio St.3d 244, 2012-Ohio-4637, the Supreme Court considered the argument of Pamela Guthrie that the SHO had improperly refused to consider her attempt at rehabilitation as a factor in favor of granting her application for PTD compensation. Guthrie argued that she made serious attempts at rehabilitation over a five-year period and specifically that the SHO unfairly discounted those efforts. Essentially, the SHO punished her for her failure at vocational rehabilitation. Claimant cited this court's decision in *State ex rel. Ramsey v. Indus. Comm.*, 10th Dist. No. 99AP-733 (Mar. 30, 2000), *affd. without opinion*, 91 Ohio St.3d 24 (2001), in support.

{¶ 52} In rejecting Guthrie's argument, the Supreme Court first noted that the order denying PTD compensation in *Ramsey* had appeared to rely solely on the medical evidence and ignored vocational information available in the file. However, in *Guthrie*, the Supreme Court noted the SHO considered all factors before denying PTD compensation and refused to second-guess the evaluation of the SHO. Ultimately, the Supreme Court determined that the SHO's decision to not view Guthrie's efforts at rehabilitation favorably did not affect the validity of the order.

{¶ 53} In the present case, there simply is nothing to suggest the SHO failed to consider the vocational evidence presented at the hearing, including the evidence which demonstrated that following 20 weeks of job search, claimant was unable to secure

employment. As noted in the findings of fact, Dr. Caston identified several jobs which claimant would be capable of performing despite the fact that he lacked any transferrable skills. Here, the SHO identified the medical records relied on, discussed the vocational factors and denied claimant's application for PTD compensation. In finding a clear mistake of fact in that the SHO did not consider claimant's attempts at vocational rehabilitation, the magistrate finds that the commission abused its discretion in this regard. Even if there was, in reality, a mistake, it is not clear. *Gobich.* As such, it is this magistrate's decision that this court should issue a writ of mandamus ordering the Industrial Commission of Ohio to vacate its order wherein it exercises continuing jurisdiction and the prior commission order which denied claimant from PTD compensation should be reinstated.

/S/ MAGISTRATE
STEPHANIE BISCA

### NOTICE TO THE PARTIES

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).