[Cite as *State ex rel. Koch v. Indus. Comm.*, 2019-Ohio-4438.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel. Tina M. Koch, | : | |
| Relator, | : | |
| v. | : | No. 18AP-396 |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

D E C I S I O N

Rendered on October 29, 2019

*Plevin & Gallucci Co., L.P.A., Franklin County Court of Common Pleas L. Gallucci, III, Bradley Elzeer, II,* and *Fred S. Papalardo, Jr.*; *Paul W. Flowers Co., L.P.A., Paul W. Flowers,* and *Louis E. Grube,* for relator.

*Dave Yost,* Attorney General, and *Natalie J. Tackett,* for respondent Industrial Commission of Ohio.

*Morrow & Meyer, LLC, Mary E. Ulm,* for respondent Fresh Mark, Inc.

ON OBJECTIONS TO THE MAGISTRATE'S DECISION

NELSON, J.

{¶ 1} The Industrial Commission of Ohio is entitled to conclude that a company employee —a payroll clerk, no less—who submits false time sheets and is released from employment pursuant to established policy has voluntarily abandoned her job and is not eligible for continued temporary total disability status. And because the claimant here has made no argument to us that an employer's attempt to resolve issues with such employee through potential (mis)use of another state system (by suggesting that a prospective application for unemployment compensation be characterized as arising from a "permanent lay-off" rather than the firing) necessarily estops the employer from making its

voluntary abandonment case to the commission, we find that the magistrate was correct in recommending that we deny the writ of mandamus the claimant requests to require the commission to grant the claimed disability status.

{¶ 2} This matter comes before us on the timely objections of relator Tina M. Koch to the magistrate's May 29, 2019 decision recommending that we deny her request for a writ of mandamus directing the commission to reverse the February 22, 2017 order of the staff hearing officer that denied her claim for temporary total disability. Applying to the facts of this case the holding of *State ex rel. Louisiana-Pacific Corp. v. Indus. Comm. of Ohio*, 72 Ohio St.3d 401 (1995), the staff hearing officer concluded that Ms. Koch had "voluntarily abandon[ed] her former position" at respondent Fresh Mark, Inc., and denied her claim. Feb. 24, 2017 SHO Order, Stip.R. 90; *see Louisiana-Pacific*, 72 Ohio St.3d at 403 (a termination is voluntary when it is "generated by the claimant's violation of a written work rule or policy that (1) clearly defined the prohibited conduct, (2) had been previously identified by the employer as a dischargeable offense, and (3) was known or should have been known to the employee"). Our "independent review" of the matters to which Ms. Koch objects leads us to conclude that "the magistrate has properly determined the factual issues and appropriately applied the law." Civ.R. 53(D)(4)(d). Accordingly, we will adopt the magistrate's decision, with one clarification, and deny the writ.

{¶ 3} Ms. Koch, a Fresh Mark payroll clerk, "slipped on [a] wet floor and fell" at work on April 19, 2016, injuring her left shoulder. July 27, 2016 First Report of Injury, Stip.R. 2. She had shoulder surgery on July 21, 2016 and received temporary total disability compensation from that date until she returned to work on September 19, 2016. Jan. 9, 2017 Tr. at 4-6, Stip.R. 61-63. During that period, accountants at Fresh Mark "discovered a discrepancy" on Ms. Koch's time sheets while conducting a "routine audit." *Id.* at 22, Stip.R. 79. The time sheets recorded 16 hours of work for June 19, June 26, and July 10, but the company's electronic system for recording employee badge swipes had no record of Ms. Koch being there on those dates. *Compare* Stip.R. 27 & 29 (ADP Time & Attendance records) *with* Stip.R. 34-36 ("All Events Over Time" report for June 1, 2016 to July 31, 2016). Fresh Mark's employee handbook warned employees that "[t]ampering with the time keeping system or falsifying time keeping records are grounds for termination." Handbook for Salaried Employees, Stip.R. 23.

{¶ 4} When Ms. Koch returned to work on September 19, 2016, her supervisor, Dan Holt, and Fresh Mark's Human Resource Director, Tim Albrecht, confronted her about the discrepancies. Jan 9, 2017 Tr. at 7, Stip.R. 64. She "denied falsifying her time sheets but admitted that she may have completed them in advance in anticipation of the time she thought she was going to be working," and failed to correct them before submitting them to Fresh Mark. Feb. 24, 2017 SHO Order, Stip.R. 90.

{¶ 5} Mr. Holt and Mr. Albrecht testified that they informed Ms. Koch that her employment was terminated for falsifying time records. Jan. 9, 2017 Tr. at 10, Stip.R. 67; Feb. 16, 2017 Tr. at 14, Stip.R. 106. She remembers the conversation differently, claiming that she was given "a permanent layoff." Jan. 9, 2017 Tr. at 7, Stip.R. 64.

{¶ 6} Fresh Mark then provided Ms. Koch with a proposed "Separation Agreement" that would have given her six weeks of severance pay in exchange for a release of all claims against Fresh Mark, along with the company's agreement not to "require the reimbursement of wages that [Ms. Koch] received and [was] not entitled to." Stip.R. 83. Fresh Mark proposed further language reading at paragraph 4 of the draft: "Fresh Mark hereby agrees not to oppose, object to, or otherwise contest any application for unemployment compensation benefits filed by Employee with the Ohio Department of Job and Family Services as long as the reason is permanent lay-off." Although Ms. Koch signed the proffered agreement, she added "additional language" and terms before returning it, causing Fresh Mark to reject it. Feb. 16, 2017 Tr. at 18-19, Stip.R. 110-11.

{¶ 7} Ms. Koch later filed a claim for total temporary disability for the period of September 19, 2016 to November 28, 2016. Noting the "equivocal nature of the evidence" surrounding Ms. Koch's termination, a district hearing officer ("DHO") concluded that no voluntary abandonment under *Louisiana-Pacific* had occurred and awarded her TTD compensation. Jan. 12, 2017 DHO Order, Stip.R. 55.

{¶ 8} Fresh Mark appealed and a staff hearing officer heard additional testimony, vacated the order, and denied Ms. Koch's claim. According to the staff hearing officer, Ms. Koch's "failure to rectify the known errors in her time records resulted in false information being provided to the Employer and the Injured Worker deriving a benefit from the same in the form of receiving pay for time that she did not work." Feb. 24, 2017 SHO Order, Stip.R. 90. This violated Fresh Mark's written work rule prohibiting the falsification of time

records, the staff hearing officer concluded, thereby satisfying the requirements of a voluntary abandonment under *Louisiana-Pacific.*

{¶ 9} Ms. Koch has raised several objections to the magistrate's decision, which largely tracks the staff hearing officer's application of *Louisiana-Pacific* to the circumstances surrounding the end of Ms. Koch's tenure at Fresh Mark. She first objects to the magistrate's findings of fact "only to the extent that it was implicitly determined that Relator was fired from her employment for any reason at all, including for violation of a written work rule." Objections at 2. But the record contains evidence that the reason Fresh Mark terminated Ms. Koch's employment was for violating the written work rule that prohibited falsification of timesheets. "Where the record contains some evidence which supports the commission's factual findings, such findings will not be disturbed." *State ex rel. Fiber-Lite Corp. v. Indus. Comm.*, 36 Ohio St.3d 202 (1988), syllabus.

{¶ 10} The magistrate's task was to determine whether there was "some evidence" in the record to support the staff hearing officer's determination that Fresh Mark terminated Ms. Koch's employment for violating a written work rule. The magistrate correctly found that there was such evidence, stating: "The SHO relied on the testimony of Mr. Albrecht and Mr. Holt concerning the termination and further found, at the very heart, relator's failure to correct her time sheets resulting in her providing false information and the benefit of pay she did not earn." App'x at ¶ 35. Ms. Koch's objection, which amounts to a plea to ignore that evidence as not "credible" and as "implausible" and therefore deserving of rejection, *see* Objections of Relator at 3 and 4, is overruled, as are her corollary objections to the magistrate's conclusions of law. "The commission is exclusively responsible for evaluating the weight and credibility of the evidence." *State ex rel. Black v. Indus. Comm.*, 137 Ohio St.3d 75, 2013-Ohio-4550, ¶ 19, citing *State ex rel. Burley v. Coil Packing, Inc.*, 31 Ohio St.3d 18, 20-21 (1987). Thus, "a court must not substitute its judgment for that of the commission or second-guess the commission's evaluation of the evidence." *Id.* at ¶ 22, citing *State ex rel. Guthrie v. Indus. Comm.*, 133 Ohio St.3d 244, 2012-Ohio-4637, ¶ 11. Because a reviewing court lacks the authority to reassess the credibility of the witnesses upon whose testimony the commission relied, the magistrate did not err in accepting the commission's evaluation of the credibility of the Fresh Mark representatives.

{¶ 11} Ms. Koch also asserts: "Just as the SHO did, the Magistrate misread the [proposed] Separation Agreement" by "concluding that there was 'no reference in this

document to the Injured Worker being laid off,' " despite paragraph four of the draft. Objections at 4, quoting Feb. 24, 2017 SHO Order. That is incorrect, and would not appear dispositive in any event. We understand that all parties find the proposed Separation Agreement potentially probative of Fresh Mark's intent and appear to agree that the commission was justified in looking to this document, despite their differing interpretations of it. *Compare* Objections at 4-6 *with* Jun. 25, 2019 Memorandum of Respondent Fresh Mark, Inc. in Opposition to Relator's Objections to Magistrate's Decision at 11 (the SHO "specifically noted this language and found, as a matter of fact, that the Separation Agreement specifically states that Relator's employment was being terminated") *and* July 1, 2019 Respondent's, Industrial Commission of Ohio, Memorandum Contra to Objections of Relator, Tina Koch at 7-8 (provisions of proposed Separation Agreement "support the commission's decision that Koch violated a known written work rule sufficient to warrant termination"). But no one, including Ms. Koch, has argued that the commission was limited to considering only the proposed agreement and barred from considering any other evidence.

{¶ 12} First, Ms. Koch misreads the magistrate's decision, which specifically acknowledges that "the SHO did incorrectly state that there was no reference [in the proposed Settlement Agreement] to relator being laid off." App'x at ¶ 38. Second, Ms. Koch cites no reason why Fresh Mark would have been required to make its grounds for the firing explicit in that writing. Third, the language of the proposed agreement as a whole, including language that "Fresh Mark ha[d] decided to terminate Employee's employment" and that payroll clerk Koch had received wages "you * * * were not entitled to" arguably might weigh in favor of the commission's finding that she was fired; but in any event, and if the references to "termination" did not signal for-cause dismissal, *see* Objections of Relator at 5, the reason why Ms. Koch was terminated still could remain a fact question for the commission to review on the evidence overall. Finally, and again, Ms. Koch presents no argument that the company's suggested language about it not opposing an unemployment compensation claim if based on an assertion of "permanent lay-off" wholly nullified and prevented the commission from considering testimonial evidence that Ms. Koch was fired.

{¶ 13} Regardless of what the proposed but not adopted Separation Agreement said, the staff hearing officer had evidence on which to conclude that Ms. Koch was indeed fired

for the fireable offense of submitting false time records. The staff hearing officer cited the rule in Fresh Mark's employee handbook providing termination for "falsifying time keeping records," cited Ms. Koch's admission that she filled time sheets out in advance and failed to correct them after submitting them, and cited the testimony of Mr. Albrecht and Mr. Holt that she was fired on that basis. Feb. 24, 2017 SHO Order. Ms. Koch concedes that "the Employer's representatives insisted that she was really fired for having 'stoled' company money * * *." Objections of Relator at 3-4. That concession establishes that there is some evidence for the commission's conclusion that Ms. Koch voluntarily abandoned her employment. Ms. Koch therefore is incorrect to assert that "[n]one of the evidence even suggests that she was actually fired for any specific reason," or to assert that no evidence supported the commission's conclusion that she "violated a written work rule which she knew or should have known would have resulted in her termination." Objection at 6, quoting App'x at ¶ 35.

{¶ 14} We overrule all objections and adopt the magistrate's decision as our own, while clarifying that we read the last full sentence of paragraph 38 of the appended decision to mean that the draft agreement's "sole reference that the employer would not oppose an application for unemployment compensation provided the relator notes the reason as permanent layoff does not change the nature of" the termination (as opposed to "the settlement agreement"). We therefore deny Ms. Koch's request that we issue a writ of mandamus.

{¶ 15} We are constrained to observe, however, that Ms. Koch is correct in noting that generally "Ohio law prohibits workers who have been terminated for cause from collecting unemployment benefits." Objections of Relator at 4, citing R.C. 4141.29(D)(2)(a). The attorney general's office has represented the industrial commission in this matter, is apprised of the facts of record including the terms of Fresh Mark's settlement proposal, and is in a position to make any notifications or undertake further action if appropriate.

*Objections overruled; writ denied.*

KLATT, P.J., and BROWN, J., concur.

————————————

# A P P E N D I X

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel. Tina M. Koch, | : | |
| Relator, | : | |
| v. | : | No. 18AP-396 |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

## M A G I S T R A T E ' S   D E C I S I O N

### Rendered on May 29, 2019

*Plevin & Gallucci Co., L.P.A., Franklin County Court of Common Pleas L. Gallucci, III, Bradley Elzeer, II,* and *Fred S. Papalardo, Jr.*; *Paul W. Flowers Co., L.P.A., Paul W. Flowers,* and *Louis E. Grube,* for relator.

*Dave Yost,* **Attorney General, and** *Natalie J. Tackett,* **for respondent Industrial Commission of Ohio.**

*Morrow & Meyer, LLC, Mary E. Ulm,* **for respondent Fresh Mark, Inc.**

### IN MANDAMUS

{¶ 16} Relator, Tina M. Koch, has filed this original action requesting this court issue a writ of mandamus against respondent, Industrial Commission of Ohio ("commission"), which denied her request for temporary total disability ("TTD") after finding that her post-injury violation of a written work rule constituted a voluntary abandonment of employment, and ordering respondent to grant her that compensation.

<u>Findings of Fact</u>:

{¶ 17} 1. Relator worked as a payroll clerk for respondent Fresh Mark, Inc. ("employer"). According to her testimony at the hearings, she also occasionally worked cleaning at three of relator's facilities.

{¶ 18} 2. Relator was injured on April 19, 2016 when she slipped and fell on a wet floor. Relator's claim is allowed for the following conditions: "neck sprain; left shoulder sprain; left partial supraspinatus tear; left biceps tear."

{¶ 19} 3. On July 21, 2016, Mark Shepard, M.D., performed the following surgical procedure on relator's right shoulder:

> Right shoulder arthroscopy with extensive debridement of torn labrum, torn rotator cuff, torn biceps tendon, arthroscopic subacromial decompression, and arthroscopic distal clavicle excision, and arthroscopic rotator cuff repair.

{¶ 20} 4. Dr. Shepard completed a Medco-14 Physician's Report of Work Ability certifying that relator was temporarily not released to any work, including the former position of employment, from July 21 to July 29, 2016.

{¶ 21} 5. While relator was off work, the employer's accounting department conducted a routine audit. Discrepancies were found in relator's time sheets. In a July 27, 2016 e-mail from Karen Dunn to Tom Fee, a discrepancy of 16 hours was noted between June 19 and July 10, 2016. The discrepancies were noted because relator has an electronic system (Lenel) which requires that each employee swipe his/her badge when entering the facilities. According to Lenel, there was no record that relator worked at any of the facilities on June 19, June 26, or July 10, 2016. Sign-in sheets and cameras were also reviewed and there was no record that relator was in any of the buildings on those dates. Further, relator did not log into her work computer on those days.

{¶ 22} 6. The employer did not immediately contact relator because she was off work recovering from surgery.

{¶ 23} 7. The employer provided a copy of its handbook for salaried employees. The handbook provides, in relevant part:

> Federal and state regulations require that accurate time records be maintained for all non-exempt employees. Upon employment, you will be informed of the time keeping system in place at your facility. It is your responsibility to follow the system in place at your facility. The time keeping system is a legal record of time worked. An employee's attendance is

determined by the system in place. Tampering with the time keeping system or falsifying time keeping records are grounds for termination.

{¶ 24} 8. When relator returned to work on September 19, 2016, Tim Albrecht, the employer's human resource manager, had a discussion with relator concerning the discrepancies. After being presented with the evidence indicating that she had not entered any of the employer's facilities on the dates in question, relator admitted that she occasionally fills out a time sheet ahead of schedule and marks down the hours which she believes she will work. Relator indicated that she must have forgotten to go back and correct the time sheets.

{¶ 25} 9. Relator prepared a separation agreement and release of claims for relator to sign. That agreement provides, in pertinent part:

> WHEREAS, Fresh Mark has decided to terminate Employee's employment with Fresh Mark effective as of the close of business on September 19, 2016; and
>
> WHEREAS, the Parties have deemed it prudent and advisable and wish to resolve all matters and issues between them arising from or relating to Employee's employment with Fresh Mark and the termination of Employee's employment with Fresh Mark.
>
> NOW, THEREFORE, in consideration of the mutual promises and covenants contained herein, Employee and Fresh Mark hereby agree as follows:
>
> [One] Severance Pay. Upon the Effective Date of this Agreement, and retroactive to Employee's Date of Separation, Fresh Mark will continue Employee's regular base pay, less applicable payroll taxes and withholdings, for a period of 6 weeks (the "Severance Pay Period"). Such payments to Employee will be made in accordance with the Company's regular payroll practices.
>
> [Two] Waiver of Overpayment. Fresh Mark will not require the reimbursement of wages that you received and were not entitled to.
>
> * * *
>
> [Four] Unemployment Benefits. Fresh Mark hereby agrees not to oppose, object to, or otherwise contest any application for unemployment compensation benefits filed by Employee

> with the Ohio Department of Job and Family Services *as long as the reason is permanent lay-off.*
>
> [Five] <u>Neutral Reference</u>. **If inquiries are made of Fresh Mark by potential employers of Employee, Fresh Mark will provide a neutral reference confirming that Employee was employed, date of employment, and position held. No further information will be provided.**
>
> \* \* \*
>
> [Fourteen] <u>Re-Employment</u>. **Employee acknowledges that, because of payments and benefits offered to her by Fresh Mark in this Agreement, she has no right to future employment with Fresh Mark, and she agrees that she shall not apply in the future for employment with Fresh Mark. Employee acknowledges that Fresh Mark is not obligated to consider any application from her in the future.**
>
> \* \* \*
>
> [Sixteen] <u>Entire Agreement</u>. **Employee and Fresh Mark agree that this Agreement contains the entire agreement between the Parties hereto and replaces any prior agreements, contracts and/or promises, whether written or oral, with respect to the subject matters included herein. This Agreement may not be changed orally, but only in writing, signed by each of the Parties hereto.**

(Emphasis sic and added.)

{¶ 26} 10.  On October 21, 2016, relator filed a motion seeking the payment of TTD compensation from September 19 through November 28, 2016, when she returned to work with a different employer.

{¶ 27} 11.  The matter was heard before a district hearing officer ("DHO") on January 9, 2017.  The DHO granted the requested period of TTD compensation finding that the employer had not met its burden of proving that relator was, in fact, terminated.  Relator had asserted she had been laid off.

{¶ 28} 12.  The employer filed an appeal and the matter was heard before a staff hearing officer ("SHO") on February 16, 2017.  The SHO vacated the prior DHO order and denied the requested period of TTD compensation finding that relator had been terminated for violation of a written work rule.  The SHO explained:

By way of history, the Staff Hearing Officer notes that prior to 09/19/2016 the Employer of record had been paying the Injured Worker temporary total disability compensation as a result of surgery that was authorized in this claim. However, while the Injured Worker was off on temporary total disability compensation it came to the Employer's attention that some of the Injured Worker's time records prior to her going off on disability did not match the hours that she worked. As the Injured Worker was off on temporary total disability compensation no action was taken by the Employer. However, when the Injured Worker reported for work on 11/19/2016 to resume the duties of her former position of employment the Employer confronted her about these discrepancies and immediately terminated her employment.

The Staff Hearing Officer finds that the Injured Worker's termination of employment on 09/19/2016 was a voluntary abandonment under the holding of *State ex rel. Louisiana-Pacific Corp. v. Indus. Comm.* (1995), 72 Ohio St.3d 401, thereby precluding the payment of temporary total disability compensation. The Court in *Louisiana-Pacific* found that a discharge from employment was voluntary when termination resulted from violation of a written work rule or policy that: (1) clearly define the prohibited conduct; (2) had been previously identified by the employer as a dischargeable offense; and (3) was known or should have been known to the employee. The Employer's handbook for salaried employees clearly indicates that tampering with the time keeping system or falsifying time keeping records are grounds for termination. The Injured Worker was aware of this policy as she was required to use this handbook in performing her duties with the Employer. The Staff Hearing Officer notes that the Injured Worker denied falsifying her time sheets but admitted that she may have completed them in advance in anticipation of the time she thought she was going to be working and that she may not have corrected the same prior to submitted them to the Employer. However, giving the Injured Worker the benefit of the doubt, the Staff Hearing Officer finds that her failure to rectify the known errors in her time records resulted in false information being provided to the Employer and the Injured Worker deriving a benefit from the same in the form of receiving pay for time that she did not work.

The Staff Hearing Officer notes that while the Injured Worker testified that she was told on 09/19/2016 that she was being laid off and there was no indication that she was being

terminated, both Mr. Albrecht and Mr. Holt testified to the contrary. Moreover, the Separation Agreement and Release prepared by the Employer on 09/19/2016 clearly states that the Injured Worker's employment was being terminated. There is no reference in this document as to the Injured Worker being laid off. While the Injured Worker declined to sign the Agreement the language contained therein clearly states that the Injured Worker's employment with the Employer was being terminated.

As such, it is clear that the Injured Worker's termination of employment on 09/19/2016 was tantamount to her having voluntarily abandon her former position of employment for reasons unrelated to the allowed conditions in this claim.

Accordingly, the C-86 Motion filed by the Injured Worker on 10/21/2016 is denied.

{¶ 29} 13.  Relator's appeal and request for reconsideration were both refused and denied.

{¶ 30} 14.  Thereafter, relator filed the instant mandamus action in this court.

Conclusions of Law:

{¶ 31} For the reasons that follow, it is this magistrate's decision that this court should deny relator's request for a writ of mandamus.

{¶ 32} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law. *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28 (1983).

{¶ 33} TTD compensation awarded pursuant to R.C. 4123.56 has been defined as compensation for wages lost where a claimant's injury prevents a return to the former position of employment.  Upon that predicate, TTD compensation shall be paid to a claimant until one of four things occurs: (1) claimant has returned to work; (2) claimant's treating physician has made a written statement that claimant is able to return to the former position of employment; (3) when work within the physical capabilities of claimant is made available by the employer or another employer; or (4) claimant has reached MMI.  *See* R.C. 4123.56(A); *State ex rel. Ramirez v. Indus. Comm.*, 69 Ohio St.2d 630 (1982).

{¶ 34} Relator argued that she was permanently laid off and not terminated. In support of her argument, relator pointed to paragraph four of the separation agreement which pertained to unemployment benefits. That paragraph provides:

> Unemployment Benefits. Fresh Mark hereby agrees not to oppose, object to, or otherwise contest any application for unemployment compensation benefits filed by Employee with the Ohio Department of Job and Family Services *as long as the reason is permanent lay-off.*

(Emphasis sic and added.)

{¶ 35} The commission disagreed with relator's argument finding that relator had, in fact, violated a written work rule which she knew or should have known would have resulted in her termination. *State ex rel. Louisiana-Pacific Corp. v. Indus. Comm.*, 72 Ohio St.3d 401 (1995). The SHO relied on the testimony of Mr. Albrecht and Mr. Holt concerning the termination and further found, at the very heart, relator's failure to correct her time sheets resulted in her providing false information and the benefit of pay she did not earn. The requirements of *Louisiana-Pacific* were met here. The SHO also noted that the separation agreement and release clearly indicated that relator was being terminated.

{¶ 36} Relator points to the fact that the SHO said that there was no reference in the agreement to her being laid off as evidence of a clear mistake of fact on the part of the SHO and contends the commission abused its discretion when it refused to exercise its continuing jurisdiction to correct same. For the reasons that follow, the magistrate disagrees.

{¶ 37} Pursuant to R.C. 4123.52, "[t]he jurisdiction of the industrial commission and the authority of the administrator of workers' compensation over each case is continuing, and the commission may make such modification or change with respect to former findings or orders with respect thereto, as, in its opinion is justified." In *State ex rel. B & C Machine Co. v. Indus. Comm.*, 65 Ohio St.3d 538, 541-42 (1992), the court examined the judicially-carved circumstances under which continuing jurisdiction may be exercised, and stated as follows:

> R.C. 4123.52 contains a broad grant of authority. However, we are aware that the commission's continuing jurisdiction is not unlimited. See, *e.g., State ex rel. Gatlin v. Yellow Freight System, Inc.* (1985), 18 Ohio St.3d 246, 18 OBR 302, 480 N.E.2d 487 (commission has inherent power to reconsider its

order for a reasonable period of time absent statutory or administrative restrictions); *State ex rel. Cuyahoga Hts. Bd. of Edn. v. Johnston* (1979), 58 Ohio St.2d 132, 12 O.O.3d 128, 388 N.E.2d 1383 (just cause for modification of a prior order includes new and changed conditions); *State ex rel. Weimer v. Indus. Comm.* (1980), 62 Ohio St.2d 159, 16 O.O.3d 174, 404 N.E.2d 149 (continuing jurisdiction exists when prior order is clearly a mistake of fact); *State ex rel. Kilgore v. Indus. Comm.* (1930), 123 Ohio St. 164, 9 Ohio Law Abs. 62, 174 N.E. 345 (commission has continuing jurisdiction in cases involving fraud); *State ex rel. Manns v. Indus. Comm.* (1988), 39 Ohio St.3d 188, 529 N.E.2d 1379 (an error by an inferior tribunal is a sufficient reason to invoke continuing jurisdiction); and *State ex rel. Saunders v. Metal Container Corp.* (1990), 52 Ohio St.3d 85, 86, 556 N.E.2d 168, 170 (mistake must be "sufficient to invoke the continuing jurisdiction provisions of R.C. 4123.52"). Today, we expand the list set forth above and hold that the Industrial Commission has the authority pursuant to R.C. 4123.52 to modify a prior order that is clearly a mistake of law.

*Id.* at 541.

{¶ 38} Although the SHO did incorrectly state there was no reference to relator being laid off, the magistrate agrees with the SHO's finding that the separation agreement clearly provides that relator's employment was being terminated. At the outset, the agreement notes the employer has "decided to terminate [relator's] employment," the parties deem it "prudent and advisable * * * to resolve all matters and issues * * * relating to * * * the termination of [relator's] employment," the employer agreed to "provide a neutral reference" confirming relator's employment without providing any further information, relator acknowledged that she had "no right to future employment." The magistrate finds the sole reference that the employer would not oppose an application for unemployment compensation provided the relator notes the reason as permanent layoff does not change the nature of the separation agreement.

{¶ 39} The magistrate finds the commission did not abuse its discretion when it determined the employer had presented sufficient evidence to satisfy the requirements of *Louisiana-Pacific* and denying relator's request for TTD compensation. As such, it is this magistrate's decision that this court should deny relator's request for a writ of mandamus.

/S/ MAGISTRATE
STEPHANIE BISCA

## NOTICE TO THE PARTIES

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).